BANK OF NEW YORK, Trustee, Appellant (Plaintiff below),

v.

Stephen H. NALLY; Hiram Nally; Eileen Nally; State of Indiana; Marina Limited Partnership, Appellees (Defendants below).

Tod D. Owens and Pamela E. Owens, Appellees (Third Party Plaintiffs below),

v.

Stephen N. Nally, Bank of New York, Trustee, Shae Wiles, Michael Mize, Internal Revenue Service, et al., Appellees (Third Party Defendants below).

No. 29S02–0405–CV–214.

Supreme Court of Indiana.

Jan. 4, 2005.

Craig D. Doyle, Joanne B. Friedmeyer, James L. Shoemaker, Indianapolis, IN, Attorneys for Appellant.

Patrick R. Ragains, Anderson, IN, Michael E. Farrer, Christopher D. Cody, Elwood, IN, Attorneys for Appellees.

BOEHM, Justice.

We hold that a mortgage recorded before a deed to the mortgagor is recorded but after the deed is dated and delivered is within the mortgagor's chain of title as of the time of recording. We also hold that equitable subrogation is an appropriate remedy and available to a subsequent mortgagee who pays off the senior mortgage in total.

### Factual and Procedural Background

This is a dispute between the Bank of New York and Tod D. and Pamela E.

Owens, husband and wife, over the priority of their mortgages on a residence in Hamilton County. In capsule form, Mr. and Mrs. Owens sold the property and took back a second mortgage to finance part of the purchase price. The Bank's assignor later refinanced the first mortgage. The issue is whether the mortgage held by the Bank is superior to the Owens mortgage. The material facts are not in dispute.

On December 16, 1996, the Owenses conveyed the real estate by warranty deed to Stephen H. and Jennifer R. Nally, husband and wife. On the same day, the Nallys also executed a mortgage in favor of Amtrust Financial Services, Inc. in the amount of $204,000, with a variable initial interest rate beginning at 7.250% and not to exceed 13.250%. The Nallys also executed a promissory note and mortgage to the Owenses in the principal amount of $22,490.91 plus 21% annual interest to maturity and 24% interest thereafter. The Owens mortgage states, "This mortgage is subordinate to the mortgage lien of Amtrust Financial Services, Inc. dated December 16, 1996 in the amount of $204,000.00."

Tod Owens is a licensed title insurance agent and runs an escrow company. Mr. Owens prepared the Owens mortgage himself. He attended the closing but chose not to have the closing agent record his mortgage with the other documents. Ten days after closing, on December 26, 1996, Mr. Owens recorded the Owens mortgage and a record of the Owens mortgage was noted in the mortgagor-mortgagee index. On January 21, 1997, thirty-six days after the closing, and twenty-six days after the Owens mortgage was recorded, the war-

ranty deed from the Owenses to the Nallys was recorded and noted in the grantor-grantee index. Immediately after the deed was recorded the Amtrust mortgage was recorded. Eighteen months later the Amtrust mortgage was released and Stephen H. Nally, unmarried, executed a mortgage on the real estate in favor of EquiVantage, Inc. in the amount of $265,500.00. The record does not disclose the applicable interest rate on the EquiVantage mortgage. The EquiVantage mortgage was recorded on June 12, 1998. Proceeds from the EquiVantage mortgage were used to pay off the Amtrust mortgage and a number of Nallys' creditors, but none of the EquiVantage mortgage proceeds went to pay off the Owens mortgage.[1] In November 1999, the EquiVantage mortgage was assigned to the Bank in the normal course of business for value and four months later the assignment was recorded. The Bank relied on EquiVantage's title insurance and did not conduct its own title search. EquiVantage's search did not reveal the Owens mortgage. At the time the Bank acquired the EquiVantage mortgage, it did not have actual knowledge of the Owens mortgage. The record is silent as to EquiVantage's actual knowledge of the Owens mortgage at the time EquiVantage refinanced and paid off the Amtrust mortgage.

In April 2000, the Bank sued to foreclose its mortgage. Four months later Mr. and Mrs. Owens sought and received permission to intervene as third-party plaintiffs. The Owenses then filed a counterclaim and cross-claim seeking to foreclose their mortgage, which they contend-

---

1. Of the $265,500.00 from the EquiVantage mortgage $15,403.58 was disbursed to Mr. Nally. The balance was used to pay off the Amtrust mortgage ($202,323.04), the Nallys' creditors (First of America: $9,547; Union Federal: $6,040; Key Bank: $6,045; L.S. Ayres: $976; Nordstrom: $235; Sears: $1,836; Levitz: $660; IRS (tax lien): $3,400; State of Indiana: $580; National City: $602; HHD Bank: $2,136; Key Bank: $2,458; Bank One: $864), and settlement charges ($12,404.38).

ed was superior to the Bank's. The Bank responded that it was a bona fide purchaser for value without notice of the Owens mortgage. Alternatively, it argued it was entitled by equitable subrogation to assert Amtrust's priority because it was an assignee of EquiVantage and EquiVantage had paid off the Nallys' debt to Amtrust. After the parties filed cross motions for summary judgment, the trial court denied the Bank's motion and granted summary judgment in favor of the Owenses. The Court of Appeals affirmed. The Court of Appeals concluded, "a purchaser is required to search the mortgagor-mortgagee index and is held to constructive notice of those documents recorded in [that index]." *Bank of New York v. Nally,* 790 N.E.2d 1071, 1073 (Ind.Ct.App.2003). Additionally, the Court of Appeals held that the Bank was " 'culpably negligent' by not locating the mortgage to Owens" and thus not entitled to equitable subrogation necessary to assert Amtrust's priority over Owens. *Id.* On rehearing, the Court of Appeals explained that "[b]ecause Indiana Code § 36-2-11-12(b) requires mortgages to be kept in a separate index from the grantor-grantee index, ... [the Bank] is held to constructive notice of documents contained in both indexes." *Bank of New York v. Nally,* 801 N.E.2d 688, 689 (Ind.Ct. App.2004). We granted transfer. *Bank of New York v. Nally,* 812 N.E.2d 806 (Ind. 2004).

### Standard of Review

■ Motions for summary judgment are properly granted only when the pleadings and designated evidence reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Worman Enters., Inc. v. Boone County Solid Waste Mgmt. Dist.,* 805 N.E.2d 369, 373 (Ind. 2004). This is the same standard used by the trial court in deciding to grant or deny summary judgment. *Id.* In determining whether issues of material fact exist, the court must accept as true those facts established by evidence favoring the non-moving party and resolve all doubts against the moving party. *Id.*

### I. Notice of Recorded Documents

■ The Bank contends it is a bona fide purchaser for value and without notice of the Owens mortgage. In order to qualify as a bona fide purchaser, one must purchase in good faith, for valuable consideration, and without notice of the outstanding rights of others. *John v. Hatfield,* 84 Ind. 75, 81–82 (1882); *Keybank Nat'l Ass'n v. NBD Bank,* 699 N.E.2d 322, 327 (Ind. Ct.App.1998). Good faith and consideration are not at issue here, but the Owenses contend, and the Court of Appeals agreed, that the Bank was charged with notice of the Owens mortgage as a matter of law.

■ The law recognizes both constructive and actual notice. *Altman v. Circle City Glass Corp.,* 484 N.E.2d 1296, 1298 (Ind.Ct.App.1985). A "purchaser of real estate is presumed to have examined the records of such deeds as constitute the chain of title thereto under which he claims, and is charged with notice, actual or constructive, of all facts recited in such records showing encumbrances, or the non-payment of purchase-money." *Smith v. Lowry,* 113 Ind. 37, 44, 15 N.E. 17, 20 (1888). *Accord Mettart v. Allen,* 139 Ind. 644, 39 N.E. 239 (1894); *Wagner v. Winter,* 122 Ind. 57, 63 23 N.E. 754, 755 (1889); *State ex rel. Lowry v. Davis,* 96 Ind. 539, 544 (1884). A mortgage provides constructive notice to subsequent purchasers when it is properly acknowledged and recorded. *Sinclair v. Gunzenhauser,* 179 Ind. 78, 133, 135–36, 100 N.E. 376, 378 (1913); *Keybank,* 699 N.E.2d at 327. However, "[a] record outside the chain of

title does not provide notice to bona fide purchasers for value." *Szakaly v. Smith,* 544 N.E.2d 490, 492 (Ind.1989). These rules apply to both purchasers and mortgagees. *See id.* (purchasers); *Sinclair,* 179 Ind. at 133, 100 N.E. 376 (mortgagees); *Keybank,* 699 N.E.2d 322.

■ Owens argues that the Bank had constructive notice of the Owens mortgage because it was properly recorded in the mortgagor-mortgagee index and the Bank had a duty to search that index along with the grantor-grantee index. The General Assembly has provided that recorders are to create separate indices for deeds and mortgages on real estate.[2] The Court of Appeals concluded that "[b]ecause Ind. Code § 36–2–11–12(b) requires the maintenance of separate indexes for mortgages and deeds, we find that in addition to searching the grantor-grantee index, a purchaser is required to search the mortgagor-mortgagee index and is held to constructive notice of those documents recorded in both indexes." *Bank of New York,* 790 N.E.2d at 1073. We agree that a purchaser must search both indices, but the issue is what period of time the search must cover. The Bank argues that the search is only from the date of recording the deed to the mortgagor and the Court of Appeals appears to conclude that the search must be back to the origin of title,

in this State typically a grant from the United States. We disagree with both.

The mortgage to the Owenses was recorded before the deed to the Nallys was recorded, but after the Nallys had obtained title. The Indiana recording statute provides that:

(a) A:

(1) Conveyance or mortgage of land or of any interest in land; and

(2) a lease for more than three (3) years; must be recorded in the recorder's office of the county where the land is situated.

(b) A conveyance, mortgage, or lease takes priority according to the time of its filing. The conveyance, mortgage, or lease is fraudulent and void as against any subsequent purchaser, lessee, or mortgagee in good faith and for a valuable consideration if the purchaser's, lessee's, or mortgagee's deed, mortgage, or lease is first recorded.

Ind.Code § 32–21–4–1 (2002).

■ The purpose of recording a mortgage is to give notice to persons subsequently dealing with the property of the existence of the mortgage and to charge them with notice of what the records disclose. *Szakaly,* 544 N.E.2d at 491–92; *Keybank,* 699 N.E.2d at 327. To charge subsequent purchasers with notice, a mort-

---

**2.** Indiana Code section 36–2–11–12 (1997) provides that:

(a) The recorder shall index each volume of instruments he records by:

(1) the name of each grantor, promisor, or covenantor, in alphabetical order and cross-referenced to the proper grantee, promise, or covenantee; and

(2) the name of each grantee, promise, or covenantee, in alphabetical order and cross-referenced to the proper grantor, promisor, or covenantor.

(b) The recorder shall accurately maintain separate indexes of all the records of:

(1) deeds for real estate; and

(2) mortgages on real estate;

in his office. The recorder shall index each deed or mortgage alphabetically, by the name of each grantor and grantee or mortgagor and mortgagee, and shall include in each index entry a concise description of the real property, the date of the deed or mortgage, and the number or letter of the book and the page at which each deed or mortgage is recorded.

gage must be recorded in the proper county, *First Nat'l Bank of Carlisle v. Coen*, 76 Ind.App. 143, 144–45, 131 N.E. 531, 532 (1921), and must contain an accurate legal description of the property, *Rinehardt v. Reifers*, 158 Ind. 675, 676–77 64 N.E. 459, 459 (1902). Both of these requirements were met by recording the Owens mortgage in the office of the Hamilton County Recorder. A third requirement, however, is disputed. We have said on a number of occasions that a recorded mortgage must be in the "chain of title." *Szakaly*, 544 N.E.2d at 492; *Sinclair v. Gunzenhauser*, 179 Ind. 78, at 117, 98 N.E. 37, at 51 (1912) ("when the record [of a mortgage] is not in the chain of title, it is almost universally held that the record is not notice"); *Meyer v. Marine Builders, Inc.*, 797 N.E.2d 760, 774 (Ind.Ct.App.2003) ("A record [of a mortgage] outside the chain of title does not provide notice to bona fide purchasers for value.").

In *Szakaly*, this Court described the concept of "chain of title" to a tract of land:

> In a title search, the prospective purchaser or his abstractor assesses the marketability of title to a tract of land by determining the "chain of title." Beginning with the person who received the grant of land from the United States, the purchaser or abstractor traces the name of the grantor until the conveyance of the tract in question. The particular grantor's name is not searched thereafter. As the process is repeated, the links in the chain of title are forged.

544 N.E.2d at 491–492 (citing Schroeder, *Title Searches and Marketable Title*, Basic Real Estate Practice I–30 (1986)). The prospective purchaser or his abstractor need search the mortgagor-mortgagee index only for mortgages recorded while the mortgagor holds title to the tract. The Owenses argue that when a mortgage is recorded it is in the chain of title regardless of when the mortgagor's deed is recorded. The Bank argues that the Owens mortgage is outside the chain of title because it was recorded before the deed was recorded. We think neither is correct. Once recorded, a deed gives notice of the grantee's title as of the date of the deed, not the date of recording. A purchaser conducting a search in the interim between closing and recording is without notice, but a purchaser searching after recording is on notice of the grantee's title as of the date of transfer. This is because the deed, once recorded, tells the world the date on which title was transferred. "[T]he period of notice, and hence the period of search, extends as to a particular owner from the date that he acquires title (not the date at which the transfer is recorded) to the date of the recording of a conveyance by him." 4 *American Law of Property* § 17.19 (1952). *Accord Higgins v. Dennis*, 104 Iowa 605, 74 N.W. 9 (Iowa 1898); 14 *Powell on Real Property* § 82.03[2][a] (Michael Allan Wolf ed., Matthew Bender 2000) ("each link [in a chain of title] begins with the date on which the interest is conveyed to a specific individual in the chain and ends with the date on which a conveyance from that individual is recorded"). Any mortgage recorded in that time period is within the chain of title.

This principle has been applied in other jurisdictions to mortgages.[3] In

---

3. In *Landis v. Miles Homes, Inc.*, 1 Ill.App.3d 331, 273 N.E.2d 153 (1971), the purchasers, husband and wife, of real estate executed a mortgage to Miles before they took title and recorded the warranty deed. Landis, a subsequent purchaser, bought the real estate at a tax sale. Landis had conducted a title search which did not reveal the Miles mortgage because it had been recorded before the deed was executed and recorded. The court held

Indiana it has been applied to easements.[4] We see no reason why a broader search should be required for mortgages than for other encumbrances. We hold that a prospective purchaser or mortgagee is on notice of outstanding mortgages for the period that the mortgagor held title of the real estate according to the chain of title. The Bank is correct that it (or its predecessor in interest) was not required to search the period antedating Nally's appearance as owner. But the fact that the Owens mortgage was recorded before the deed to Nally was recorded does not relieve EquiVantage of its duty to search the mortgagor-mortgagee index back to December 16, 1996, the date of Nally's deed according to the public record. Because the Owens mortgage was recorded after the date the deed to Nally was executed, the mortgage was within the chain of title at the time EquiVantage made its mortgage. EquiVantage was therefore on constructive notice of its existence. Because the Bank chose to rely on EquiVantage's title insurance and did not conduct its own title search, the Bank also had constructive notice of the Owens mortgage and thus is not a bona fide purchaser protected by the Indiana recording statute.

## II. Equitable Subrogation

The EquiVantage mortgage was used to pay off and retire the Amtrust mortgage, which the Owens mortgage expressly acknowledged to be superior. The Bank argues that equitable subrogation permits it to place its mortgage into the shoes of the Amtrust mortgage and retain its priority. The doctrine of equitable subrogation, sometimes misleadingly called "legal subrogation," has been recognized in Indiana for over a century. *See Birke v. Abbott*, 103 Ind. 1, 5, 1 N.E. 485, 487 (1885). Subrogation arises from the discharge of a debt and permits the party paying off a creditor to succeed to the creditor's rights in relation to the debt. *Matter of Lehman*, 690 N.E.2d 696, 699 (Ind.1997). It "arises by operation of law, that is to say it is created by the legal consequences of the acts and relationships of the parties, and thus is a legal fiction." 83 C.J.S. *Subrogation* § 2 at 499 (2000) (citations omitted). In the case of a purchaser of a note and mortgage for value, the classic formulation is that the "purchaser's right of subrogation to the mortgage he or she discharged includes its priority over junior liens of which he or she did not have actual knowledge, [and] where he or she was not culpably negligent in failing to learn of the junior lien." 83

that the Miles "mortgage cannot be considered to be 'of record' merely because it was recorded.... The record of a mortgage given prior to the time of the acquisition of record title by the mortgagor is not in the chain of title and is not constructive notice to third persons." *Id.* at 155; *See also Far West Sav. & Loan Ass'n v. McLaughlin*, 201 Cal.App.3d 67, 246 Cal.Rptr. 872 (1988).

4. *Hartig v. Stratman*, 729 N.E.2d 237 (Ind.Ct. App.2000), dealt with an instrument found to be outside the chain because it was recorded after the grantor's deed was recorded. The case involved a dispute over an easement to a driveway shared among neighbors. On June 8, 1994, Connell sold his property to Holmes

and recorded the deed at 2:24 p.m. One minute later Connell recorded the disputed easement given to his former neighbor Stratman. In 1995, Hartig purchased the property that Connell had sold to Holmes without knowledge of the Connell/Stratman driveway easement. *Id.* at 238. The Court of Appeals held that the driveway easement was outside Hartig's chain of title. It was recorded after the deed to Holmes had been recorded, albeit only one minute after, and therefore Connell's name would not have been searched after this conveyance to Holmes was discovered. *Id.* at 240. Since the easement was not within Hartig's chain of title he did not have constructive notice of its existence. *Id.*

C.J.S. *Subrogation* § 46 at 576 (2000). The Court of Appeals has described the doctrine as "a highly favored doctrine, which is to be given a liberal application." *Osterman v. Baber,* 714 N.E.2d 735, 738 (Ind.Ct.App.1999). Equitable subrogation requires the subrogee to discharge the entire debt held by the original obligor. Partial subrogation to a mortgage is not permitted because it "would have the effect of dividing the security between the original obligee and the subrogee, imposing unexpected burdens and potential complexities of division of the security and marshalling upon the original mortgagee." *Restatement (Third) of Prop.: Mortgages* § 7.6 cmt. a (1997). The EquiVantage mortgage was used to discharge Nally's entire obligation to Amtrust, and thus it met that requirement.

### A. Actual or Constructive Knowledge as a Bar to Equitable Subrogation

■ For the reasons given in Part I, EquiVantage had at least constructive knowledge of the Owens mortgage.[5] The Bank contends that it did not have actual knowledge of the Owens mortgage, and relied on EquiVantage's title insurance. To the extent knowledge is relevant to equitable subrogation, the relevant knowledge is both the Bank's and EquiVantage's. The Bank acquired no superior right to subordination than its assignor had. 83 C.J.S. *Subrogation* § 66 (2000) ("One who acquires or succeeds to rights, claims, or securities through equitable subrogation 'steps into the shoes' of the subrogor and takes them burdened with the defenses, limitations, and disqualifications

to which they were subject."). The record here is silent as to EquiVantage's knowledge at the time it paid off Amtrust. The Bank, the proponent of summary judgment, has the burden of establishing the facts necessary to its claim. "The majority of jurisdictions continue to state that actual knowledge precludes the application of equitable subrogation, while constructive knowledge does not." *Osterman,* 714 N.E.2d at 739. *See, e.g., United States v. Baran,* 996 F.2d 25, 29 (2d Cir.1993) (applying New York law); *Dietrich Indus., Inc. v. United States,* 988 F.2d 568, 572 (5th Cir.1993) (applying Texas law); *Brooks v. Resolution Trust Corp.,* 599 So.2d 1163, 1165 (Ala.1992); *Smith v. State Sav. & Loan Ass'n,* 175 Cal.App.3d 1092, 223 Cal.Rptr. 298, 301 (1985); *United Carolina Bank v. Beesley,* 663 A.2d 574, 576 (Me.1995); *Houston v. Bank of Am. Fed. Sav. Bank,* 119 Nev. 485, 78 P.3d 71, 74 (2003); *Enter. Bank v. Fed. Land Bank,* 139 S.C. 397, 138 S.E. 146, 148–50 (1927).

The Third Restatement of Property states that neither actual nor constructive notice of the preexisting junior lien is a bar to the equitable remedy of subrogation. *Restatement (Third) of Prop.: Mortgages* § 7.6 cmt. e ("Under this Restatement, ... subrogation can be granted even if the payor had actual knowledge of the intervening interest; the payor's notice, actual or constructive, is not necessarily relevant"); *see also Houston,* 78 P.3d at 73 (adopting the Restatement's rule and rationale).

In *Osterman,* the Court of Appeals declined to follow the Restatement approach. Rather, in order to determine culpability

---

5. The Court of Appeals noted that "Owens presented evidence of four different title searches where the Owens mortgage was uncovered, at least two of which were completed before the Bank was assigned the EquiVantage mortgage. There is no evidence that the Bank ever performed a title search or, in the alternative, that its search failed to uncover the Owens mortgage." *Bank of New York v. Nally,* 790 N.E.2d 1071, 1077 n. 4 (Ind.Ct.App.2003). The Bank contends that these title searches are hearsay, self-serving, and were conducted at the request of Mr. and Mrs. Owens.

the *Osterman* court balanced the payor's notice with other factors such as the sophistication of the parties and whether the transaction was commercial. 714 N.E.2d at 739. We disagree with this approach. Precluding equitable subrogation when a mortgagee discovered or could have discovered a junior lien holder runs contrary to the purposes underlying the doctrine. Equitable subrogation is a remedy to avoid an unearned windfall. *Restatement (Third) of Prop.: Mortgages* § 7.6 cmt. a. If there were no subrogation in this case, the Owenses, as junior lien holders, would be promoted in priority and receive a windfall to the extent the property is worth less than $224,813.95 ($202,323.04 used to pay off the Amtrust mortgage plus $22,490.91 secured by the Owens mortgage). Neither negligence nor constructive notice of an existing lien is relevant to whether the junior lien holder will be unjustly enriched or prejudiced. Rather, the basis for subrogation in this context is "the lender's justified expectation of receiving [a] security" interest in the property. 2 Grant S. Nelson & Dale A. Whitman, *Real Estate Finance Law* § 10.6, at 15–16 (4th ed.2002).

■ In addition to avoidance of windfalls, equitable subrogation requires consideration of other equitable factors, notably the absence of any prejudice to the interests of junior lienholders.

Perhaps the case occurring most frequently is that in which the payor [i.e. the party asserting a right to equitable

subrogation] is actually given a mortgage on the real estate, but in the absence of subrogation it would be subordinate to some intervening interest, such as a junior lien. Here subrogation is entirely appropriate, and by virtue of it the payor has the priority of the original mortgage that was discharged. This priority is often of critical importance, since it will place the payor's security in a position superior to intervening liens and other interests in the real estate. The holders of such intervening interests can hardly complain of this result, for it does not harm them; their position is not materially prejudiced, but is simply unchanged.

*Restatement (Third) of Prop.: Mortgages* § 7.6 cmt. e. Although not applicable in this case, recent legislation seems consistent with this view.[6]

■ We agree with the *Restatement* at least in the context of a conventional refinancing. A lender providing funds to pay off an existing mortgage expects to receive the same security as the loan being paid off. Refinancings are commonplace in today's economy. Permitting a junior lienholder to leapfrog the priority of the current senior mortgage would impair the owner's access to more favorable interest rates. Unless a junior lienholder is disadvantaged by permitting subrogation, we see no reason to give the junior lienholder in effect the right to block or object to the refinancing. We conclude that a mortgagee who refinances an existing mortgage is

---

6. Indiana Code section 32–29–1–11(d) (Supp. 2004) (second version), provides in pertinent part that except for those instances involving liens defined in Indiana Code section 32–28–3–1 (mechanic's liens) or a municipal sewer lien under Indiana Code section 36–9–23:

[A] mortgagee seeking equitable subrogation with respect to a lien may not be denied equitable subrogation solely because:

(1) the mortgagee:
  (A) is engaged in the business of lending; and
  (B) had constructive notice of the intervening lien over which the mortgagee seeks to assert priority;
(2) the lien for which the mortgagee seeks to be subrogated was released; or
(3) the mortgagee obtained a title insurance policy.

entitled to equitable subrogation even if it had actual or constructive knowledge of an existing lien on the property unless the junior lienholder is disadvantaged or the mortgagee is "culpably negligent" as that term is explained in Part II.B, but this remedy is subject to the rights and limitations of the subrogor.

As long as neither EquiVantage nor the Bank was culpably negligent, the Bank as assignee of the EquiVantage mortgage is allowed to stand in the shoes of the Amtrust mortgage and retain its priority status over the Owens mortgage, but only to the extent the EquiVantage mortgage proceeds were used to pay off the previous first lien held by Amtrust. In this case, the amount is $202,323.04, plus any applicable interest not to exceed 13.250%. One basis for equitable subrogation is to prevent a windfall but subrogation is also justified on the basis that the junior creditor (the Owenses) is not disadvantaged by replacing the senior priority. To allow subrogation to apply to amounts in excess of the obligation under the Amtrust mortgage would place the Owens mortgage in a worse position than it held before refinancing. Of the proceeds from the EquiVantage mortgage $63,176.96 went into Nally's pocket or was used to pay off other Nally creditors. EquiVantage is entitled to no better priority status than whatever priority those creditors held with regard to the Owens mortgage. We assume they were not superior to the Owens mortgage, but the record is silent on this point.

### B. Culpable Negligence

■■■■■ A volunteer or one charged with "culpable negligence" may not be entitled to equitable subrogation. The Owenses argue that EquiVantage was culpably negligent in not discovering the Owens mortgage during the title search prior to their loan to Nally, and that the Bank is culpably negligent for not performing its own independent title search before it acquired the EquiVantage mortgage on assignment. In resolving this issue, the Court of Appeals looked to negligence law derived from tort doctrines, and found persuasive its earlier observation in *Wilshire Servicing Corp. v. Timber Ridge Partnership*:

Under Indiana common law, there are no degrees of negligence. It is therefore difficult, at best, to place the term "culpable negligence" within an appropriate frame of reference. Suffice it to say, however, we conclude that the term contemplates action or inaction which is more than mere inadvertence, mistake or ignorance.

743 N.E.2d 1173, 1178 (Ind.Ct.App.2001), *trans. denied* (citations omitted).

■■■■ We agree with *Osterman* that application of the doctrine of equitable subrogation depends on the equities and attending facts and circumstances of each case. 714 N.E.2d at 737. We also agree with the result in *Osterman*, where a lender purchased a mortgage with an explicit reference to a "new judgment against" the seller. The lender was held culpably negligent for failure to identify a lien that was recorded before the loan closed but after the purchaser performed a title search. *Id.* at 739. We think, however, that the important fact in *Osterman* was not the degree of negligence by the lender. Subrogation, if allowed, would have elevated the mortgagee in priority over an intervening creditor who had properly perfected its lien on an apparently unencumbered property.

The term "culpable negligence" focuses on the activity of the party asserting subrogation. In fact, as the Court of Appeals observed, the level of culpability is essentially the same in most cases. *Id.* at 738. In *Osterman*, the error was in failing to update the search as of closing. In the case at bar, EquiVantage's search failed to

identify a mortgage within the chain of title, but recorded before recording of the deed to the mortgagor. Both are simply omissions with no suggestion of malice or trickery. The key to subrogation however is an equitable result. Preservation of the rights of intervening creditors who record their interests is, we think, plainly equitable. This is what occurred in *Osterman.* On the other hand, the Owenses seek to leapfrog a senior claim. This is precisely what equitable subrogation is designed to prevent.

At best, EquiVantage is negligent in failing to discover the Owens mortgage which was recorded and noted in the mortgagor-mortgagee index before the deed to Mr. and Mrs. Nally was recorded. However, this error does not rise to the level of culpability. 83 C.J.S. *Subrogation* § 13 (2000) ("The mere fact that a person seeking subrogation was negligent does not bar him or her from relief where such negligence is as to his or her own interests and does not affect prejudicially the interest of the person to whose rights subrogation is sought"). Equity should not allow the Owens mortgage to gain an unexpected elevated priority status because of the negligence of EquiVantage or its assignee that did the Owens no harm. 4 *American Law of Property* § 16.150 (1952) ("subsequent lien holders should not be permitted to gain by another's mishap or carelessness when thus granting would be purely fortuitous and accidental").

### Conclusion

The judgment of the trial court is reversed. This case is remanded for further proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ. concur.