**BANK OF AMERICA, N.A.,**
**Appellant–Plaintiff,**

v.

**Kou Chin PING, Waterwood of Carmel Homeowners Association, Inc., Bank One, N.A. f/k/a Bank One of Indiana, N.A., Appellees–Defendants.**

No. 29A05–0704–CV–231.

Court of Appeals of Indiana.

Jan. 29, 2008.

Jeffrey W. Scripture, Tammy L. Ortman, David I. Rubin, Harrison Moberly, LLP, Indianapolis, IN, Attorneys for Appellant.

Theodore J. Nowacki, Curtis T. Jones, Bose McKinney & Evans LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Bank of America, N.A. ("Bank of America") appeals the trial court's denial of its motion for summary judgment and Order on Trial ("Order") following a bench trial on Bank of America's claims against Bank One, N.A., n/k/a JPMorgan Chase Bank N.A. ("Bank One"). Bank of America raises two issues for our review,[1] which we restate as follows:

1. Whether Bank of America was entitled as a matter of law to a release of Bank One's mortgage after that mortgage, which secured a revolving line of credit, had been paid in full.

2. Whether Bank of America was entitled to relief under the doctrine of equitable subrogation.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On April 9, 1999, Kou Chin Ping opened an $80,000 revolving line of credit ("Credit Agreement") with Bank One. The Credit Agreement was secured by a mortgage ("Bank One Mortgage") on certain real estate located at 590 Burr Oak Drive in Carmel ("Real Estate"). The Bank One Mortgage was recorded on April 28, 1999, and stated, in relevant part, that:

[W]ithout limitation, this Mortgage secures a revolving line of credit, which

---

1. Because we affirm the trial court's order following the bench trial, we need not address Bank of America's argument that it was entitled to summary judgment.

obligates [Bank One] to make future obligations and advances to [Ping] up to a maximum amount of $80,000.00 so long as [Ping] complies with all the terms of the Credit Agreement.... This Mortgage also secures all modifications, extensions and renewals of the Credit Agreement, the Mortgage or any other amounts expended by [Bank One] on [Ping's] behalf as provided for in the Mortgage. Such advances may be made, repaid, and remade from time to time, subject to the limitation that the total outstanding balance owing at any one time, not including finance charges on such balance ..., any temporary charges, other charges, and any amounts expended or advanced as provided in this paragraph, shall not exceed the Credit Limit as provided in the Credit Agreement. *It is the intention of [Ping] and [Bank One] that this Mortgage secures the balance outstanding under the Credit Agreement from time to time from zero up to the Credit Limit as provided above and any intermediate balance.*

\* \* \*

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Mortgage, [Ping] shall pay to [Bank One] all amounts secured by this Mortgage as they become due, and shall strictly perform all of [Ping's] obligations under this Mortgage.

\* \* \*

FULL PERFORMANCE. *If [Ping] pays all the indebtedness when due, terminates the Credit Agreement, and otherwise performs all the obligations imposed* upon [Ping] under this Mortgage, *[Bank One] shall execute and deliver to [Ping] a suitable satisfaction of this Mortgage* and suitable statements of termination of any financing statement on

file evidencing [Bank One's] security interest in the Rents and the Personal Property. [Ping] will pay, if permitted by applicable law, any reasonable termination fee as determined by [Bank One] from time to time.

Appellant's App. at 106–08 (emphases added).

On March 9, 2001, Ping borrowed $103,700 from Nation's Mortgage Investors, Inc., which was also secured by a mortgage on the Real Estate. That mortgage was subsequently assigned to Bank of America ("Bank of America Mortgage"). The Bank of America Mortgage was recorded on April 17, 2001.

On March 14, 2001, a portion of the proceeds from the Bank of America Mortgage was used to pay the entire outstanding balance on the Credit Agreement. Bank One did not send "correspondence or instructions" to Bank of America or Ping. Appellant's Brief at 8. And neither Ping nor Bank of America took any action to terminate the Credit Agreement. However, after proceeds from the Bank of America Mortgage had been used to pay the balance owed on the credit, Ping incurred more than $76,000 in additional debt under the Credit Agreement.

On July 23, 2004, Bank of America filed its initial complaint against Ping, Bank One, and Waterwood of Carmel Homeowners Association.[2] Bank of America then amended its complaint, seeking to reform the legal description of the Real Estate in the Bank of America Mortgage, foreclosure on the Bank of America Mortgage, and a judgment that the Bank of America Mortgage was entitled to priority over the Bank One Mortgage. Ping failed to appear before the trial court, and the court entered an *in rem* default judgment

---

**2.** The Waterwood of Carmel Homeowners Association did not file an appellate brief.

against Ping. In that same order, the court reformed the Bank of America Mortgage to reflect the proper legal description of the Real Estate.

On September 14, 2005, Bank of America filed its motion for partial summary judgment, which the trial court denied after a hearing. On January 29, 2007, the court held a bench trial. And on March 30, the court entered its Order, finding that the Bank of America had either actual or constructive notice of the Bank One Mortgage, that Bank One was entitled to priority over the Bank of America Mortgage, and that Bank of America "was culpably negligent in failing to terminate the Bank One [M]ortgage." *Id.* at 9. The court then entered a decree of foreclosure on the Real Estate, with proceeds to be paid in the following order: first, to costs and taxes due; second, to Bank One; and third, to Bank of America. This appeal ensued.

### *DISCUSSION AND DECISION*

### Standard of Review

■ Where, as here, the trial court enters specific findings of fact and conclusions thereon *sua sponte,* we apply the following two-tiered standard of review: whether the evidence supports the findings, and whether the findings support the judgment. *Fowler v. Perry,* 830 N.E.2d 97, 102 (Ind.Ct.App.2005); *see also* Ind. Trial Rule 52(A). The trial court's findings and conclusions will be set aside only if they are clearly erroneous, i.e., when the record contains no facts or inferences supporting them. *Fowler,* 830 N.E.2d at 102.

A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Id.*

### Issue One: Termination of Bank One Mortgage

■ Bank of America first contends that its mortgage has priority over the Bank One Mortgage. Specifically, Bank of America maintains that it is entitled, under Indiana Code Section 32–28–1–1(b), to a release of the Bank One Mortgage because Bank of America discharged the debt underlying that mortgage and the mortgage is ambiguous as to whether written notice of termination by the mortgagor is required for the mortgage to be released.[3] Bank One responds that on its face the mortgage requires an affirmative act of termination, and, because Ping did not act to terminate the mortgage, Bank One was not required to release its mortgage lien. We must agree with Bank One.

■ It is a court's duty to interpret a contract so as to ascertain the intent of the parties. *First Fed. Sav. Bank of Ind. v. Key Mkts., Inc.,* 559 N.E.2d 600, 603–04 (Ind.1990). The court must accept an interpretation of the contract that harmonizes its provisions as opposed to one that causes the provisions to be conflicting. *Id.* In interpreting a written contract the court will attempt to determine the intent of the parties at the time the contract was made as disclosed by the language used to

---

3. Indiana Code Section 32–28–1–1(b) states as follows:

> When the debt or obligation and the interest on the debt or obligation that the mortgage, mechanic's lien, judgment, or other lien secures has been fully paid, lawfully tendered, and discharged, the owner, holder, or custodian shall:
> (1) release;
> (2) discharge; and
> (3) satisfy of record;
> the mortgage, mechanic's lien, judgment, or other lien.

express their rights and duties. *Id.* The unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts. *Abbey Villas Dev. Corp. v. Site Contractors, Inc.*, 716 N.E.2d 91, 100 (Ind.Ct.App.1999), *trans. denied.* Our standard of review of the interpretation of an unambiguous contract is *de novo. Id.*

We agree with Bank One and the trial court that the Bank One Mortgage unambiguously states three requirements for "full performance." Appellant's App. at 108 (capitalization removed). Namely, the Bank One Mortgage requires each of the following before Bank One must release the mortgage: (1) Ping must "pay[ ] all the indebtedness when due"; (2) Ping must "terminate[ ] the Credit Agreement"; and (3) Ping must perform all other obligations. *Id.* It is undisputed that, once the indebtedness under the Bank One Mortgage had been paid, Ping took no affirmative act to "terminate[ ] the Credit Agreement." *See id.* Accordingly, Bank One was not required to release its lien on the Real Estate.

We encountered a similar set of facts in *Dreibelbiss Title Co. v. Fifth Third Bank*, 806 N.E.2d 345 (Ind.Ct.App.2004), *trans. denied.* In *Dreibelbiss,* property-owner Blevins had a revolving line of credit with Fifth Third Bank ("Fifth Third") secured by real property. Fifth Third's mortgage specifically required written notice of termination of the line of credit. Some time after the line of credit was opened, Fifth Third provided Dreibelbiss Title Company ("Dreibelbiss") with a payoff form that described the outstanding balance on the line of credit and Blevins' obligation to provide written notice of termination. Dreibelbiss sent Fifth Third a check in the amount of the outstanding balance, but did not provide written notice of termination from Blevins. As such, we held that Dreibel-

biss' payment did not discharge Fifth Third's mortgage on Blevins' property. *Id.* at 348–50; *see also Liberty Mortgage Corp. v. Nat'l City Bank*, 755 N.E.2d 639 (Ind.Ct.App.2001), *trans. denied.*

Bank of America attempts to distinguish *Dreibelbiss* by arguing that the Bank One Mortgage does not require *written* notice of termination and that Bank One failed to notify Ping or Bank of America what act was required to "terminate[ ] the Credit Agreement." *See* Appellant's App. at 108. But Bank of America's arguments are not well taken. The Bank One Mortgage clearly requires *some* affirmative act of termination. And while in · *Dreibelbiss* Fifth Third sent its borrower a payoff form detailing the steps Fifth Third required for the termination of its lien, that does not mean that Bank One was legally obliged to do the same here. The Bank One Mortgage required Ping to terminate the Credit Agreement; Bank One did not need to reiterate to Ping her contractual obligations.

Absent documentation to the contrary, we decline to hold that merely to pay off an outstanding balance is sufficient to terminate a revolving line of credit, as that would violate the very nature of the credit. Again, it is our duty to interpret a contract in a manner that harmonizes its provisions and gives effect to the intent of the parties. *See First Fed. Sav. Bank*, 559 N.E.2d at 603–04. The Bank One Mortgage did not secure a term note; rather, it secured a revolving line of credit that contemplated future advances despite an occasional zero balance. *Cf. Keesling v. T.E.K. Partners, L.L.C.*, 861 N.E.2d 1246, 1254 (Ind.Ct.App.2007) (refusing to interpret a draw note as an agreement for a revolving line of credit). As Bank One correctly notes, that intention is apparent from the very nature of the agreement: "[t]he ability of a borrower to borrow, repay (includ-

ing pay in full) and reborrow principal is the single factor that distinguishes a line of credit from the traditional closed[-]end mortgage loan." Appellee's Brief at 7.

The nature of the credit aside, the parties' intent to maintain the Credit Agreement in force despite a zero balance is apparent in the plain language of the Bank One Mortgage: "It is the intention of [Ping] and [Bank One] that this Mortgage secures the balance outstanding under the Credit Agreement from time to time from zero up to the Credit Limit as provided above and any intermediate balance." Appellant's Brief at 107. And even if the termination requirement were ambiguous, the undisputed extrinsic evidence of Ping and Bank One's course of dealing demonstrates that they each intended the Bank One Mortgage, which secured the revolving line of credit, to remain a lien despite a zero balance. *See, e.g. Noble Roman's Inc. v. Pizza Boxes, Inc.*, 835 N.E.2d 1094, 1098–99 (Ind.Ct.App.2005). Specifically, Ping withdrew, and Bank One advanced, funds against the line of credit after Bank of America had paid the account in full. Thus, merely to pay off the line of credit was insufficient in itself to terminate the Credit Agreement and trigger operation of Indiana Code Section 32–28–1–1.

### Issue Two: Equitable Subrogation

Bank of America also argues that the doctrine of equitable subrogation entitles it to place its mortgage "into the shoes" of the Bank One Mortgage. *See Bank of N.Y. v. Nally*, 820 N.E.2d 644, 651 (Ind.2005). "Subrogation arises from the discharge of a debt and permits the party paying off a creditor to succeed to the creditor's rights in relation to the debt." *Id.* Subrogation requires the subrogee to discharge the entire debt held by the original obligor. *Id.* at 652. Partial subrogation to a mortgage is not permitted because it "would have the effect of dividing the security between the original obligee and the subrogee, imposing unexpected burdens and potential complexities of division of the security and marshalling upon the original mortgagee." *Id.* (quoting Restatement (Third) of Prop.: Mortgages § 7.6 cmt. a (1997)).

Subrogation is an equitable remedy. *Id.* at 654. The purpose of subrogation is "to avoid an unearned windfall." *Id.* at 652–53. That is, subrogation should be used to prevent a junior lienholder from being elevated in priority at the expense of another lienholder. *See id.* Other equitable factors should also be considered by the trial court, including whether subrogation results in the absence of any prejudice to the interests of junior lienholders. *Id.* at 653. For example, subrogation is appropriate where a payor asserting that right is actually given a mortgage on the real estate, but in the absence of subrogation it would be subordinate to some intervening interest. *See id.* (quoting Restatement (Third) of Prop.: Mortgages § 7.6 cmt. e). Notably, however, "[a] volunteer or one charged with 'culpable negligence' may not be entitled to equitable subrogation." *Id.* at 654. "Culpable negligence" focuses on the activity of the party asserting subrogation and "contemplates action or inaction which is more than mere inadvertence, mistake or ignorance." *Id.* (quoting *Wilshire Servicing Corp. v. Timber Ridge P'ship*, 743 N.E.2d 1173, 1178 (Ind.Ct.App.2001), *trans. denied.*) Ultimately, "[t]he key to subrogation ... is an equitable result" that depends on the "attending facts and circumstances of each case." *Id.* at 654–55.

Bank of America asserts that the following facts demand that the doctrine of subrogation be applied here: Bank One did not send notice that written termination of the Bank One Mortgage was required;

Bank of America discharged the Bank One Mortgage in its payoff; and any funds Bank One credited to Ping thereafter should be treated as a separate, subordinate mortgage. But, again, Bank of America ignores the nature of the revolving line of credit embodied in the Credit Agreement and the plain language of the Bank One Mortgage. And Bank of America's request for subrogation only in the amount of the original payoff, but not in the amount of Ping's subsequent withdrawals on the Bank One Mortgage, amounts to a partial subrogation, which our Supreme Court has expressly rejected. *Id.* at 652 ("Partial subrogation to a mortgage is not permitted[.]").

Bank of America also maintains that the trial court's denial of its request for subrogation was contrary to Indiana law. Specifically, Bank of America contends that the trial court could not, in accord with *Nally*, deny a request for subrogation solely on the basis of the mortgagee's constructive notice of a prior lien. *See Nally*, 820 N.E.2d at 653 ("Precluding equitable subrogation when a mortgagee discovered or could have discovered a junior lien holder runs contrary to the purposes underlying the doctrine.").

Bank of America's argument that the trial court's decision is contrary to our Supreme Court's holding in *Nally* misconstrues the trial court's holding. Although the trial court did find that Bank of America had constructive notice of the Bank One Mortgage, that finding was not the basis for the court's conclusion that Bank of America was culpably negligent in failing to terminate the Bank One Mortgage. Instead, the trial court stated as follows: "Nation[']s Mortgage, and by extension [Bank of America] as well, was culpably negligent in failing to terminate the Bank One [M]ortgage when the payoff funds were submitted. [ ]Because of its culpable

negligence, Plaintiff is not entitled to claim the protection of the doctrine of equitable subrogation." Appellant's App. at 9. The trial court did not rely on Bank of America's constructive notice in concluding that subrogation was inappropriate but on Bank of America's failure to terminate the Bank One Mortgage. Thus, the trial court did not contravene *Nally*.

We agree with the trial court's conclusion that subrogation of the Bank of America Mortgage, on these facts, would be inappropriate. Again, "[t]he key to subrogation ... is an equitable result" that depends on the "attending facts and circumstances of each case." *Id.* at 654–55. Here, Bank of America failed to take any affirmative steps to terminate the Bank One Mortgage after Bank of America had paid in full the line of credit. And, as a result, Bank One held open Ping's line of credit, and Bank One continued to advance Ping funds from that account. Bank of America's argument would result in an inequitable subrogation. Indeed, Bank One did not enjoy a windfall but advanced additional funds under the line of credit and acted properly under its Credit Agreement and mortgage. Given the plain meaning of the Credit Agreement and the mortgage that secured it, it was incumbent on Bank of America to secure release of the Bank One Mortgage as a condition of its new loan to Ping. That Bank of America failed to do so should not be allowed to prejudice Bank One. On these facts, Bank of America is not entitled to invoke the doctrine of equitable subrogation. *See id.*

Affirmed.

BAILEY, J., and CRONE, J., concur.