953 N.E.2d 486 (2011)
U.S. BANK NATIONAL ASSOCIATION, Appellant-Plaintiff,
v.
Ethyl R. SEELEY, Clarence Davidson, Pamela Davidson, et al., Appellees-Defendants.
No. 21A04-1102-MF-84.
Court of Appeals of Indiana.
July 29, 2011.
*487 Jeremy J. Butler, Ann Marie Woolwine, Burke Costanza & Carberry LLP, Merrillville, IN, Attorneys for Appellant.
Craig D. Doyle, Mark R. Galliher, Kurt V. Laker, Doyle Legal Corporation, P.C., Indianapolis, IN, Attorneys for Appellees Clarence Davidson and Pamela Davidson.

OPINION
BRADFORD, Judge.
Appellant-Plaintiff U.S. Bank National Association appeals from the trial court's entry of summary judgment in favor of Appellees-Defendants Clarence and Pamela Davidson in its suit to foreclose on certain real property owned by them. We affirm.

FACTS
On January 16, 1998, Edward and Ethyl Seeley obtained a line of home equity credit, secured by real estate located at 7535 South State Road 1 in Connersville ("the Real Estate") and pursuant to which they executed an "Indiana Open-End Mortgage" ("the Mortgage") to Star Bank, N.A. in the principal amount of $98,500.00. Appellant's App. p. 22. Specifically, the Mortgage executed by the Seeleys secured repayment of an "Equiline Agreement" ("the Agreement") that contained the following language: "By signing below, you understand that Star Bank is a national bank located in Ohio, this loan has been made in Ohio and Ohio and Federal law govern the Lender's interest and charges." Appellant's App. p. 60. Neither the Mortgage nor the Agreement contains any specific procedures to be followed in order to obtain release of the Mortgage or closure of the line of credit.
On October 6, 1999, the Seeleys sold the Real Estate to Mac and Doris Roberts for $147,000, the closing for which transaction occurred at the offices of Freedom Title Company. When conducting closings, Freedom Title acted as an agent to the lender and buyer "in obtaining quotes and satisfying existing mortgages and other liens according to the parties' instructions." Appellant's App. p. 47. In its title search, Freedom Title had discovered the Mortgage, and, on September 30, 1999, had sent a "Mortgage Payoff Request" to Star Bank's successor, Firstar Bank. Appellant's App. p. 54. On October 1, 1999, Firstar had sent a "Consumer Loan Payoff Request" to Freedom Title, which listed a payoff of $71,129.27 as of October 1, 1999, with an additional $15.92 for each day beyond that. Appellant's App. p. 55.
On October 7, 1999, Freedom Title sent Firstar a check for $71,240.71, which was an appropriate amount pursuant to Firstar's request, along with a letter that read, in relevant part, "Please close account and release mortgage. This property has been sold." Appellant's App. p. 57. Firstar received the check and letter the next day and eventually negotiated the check, but the Mortgage was not released and the line of credit was not closed. Firstar and/or its successor U.S. Bank allowed the Seeleys to continue to draw on the line of credit provided for in the Agreement, and at some point the Davidsons purchased the Real Estate from the Robertses.
On May 14, 2009, U.S. Bank filed a complaint to foreclose on the Real Estate, alleging that the Seeleys had defaulted under the terms of the Agreement and seeking to enforce the Mortgage against the Davidsons. On September 18, 2009, U.S. Bank moved for summary judgment. *488 On March 1, 2010, the Davidsons cross-moved for summary judgment and responded to U.S. Bank's summary judgment motion. Among the evidence designated by the Davidsons was an affidavit from Freedom Title co-owner and employee Lesa Shackleford. Inter alia, Shackleford averred that
[t]he word "payoff" has a particular meaning in the real estate mortgage and title industry. When a closing agent, such as Freedom Title, receives a "payoff" figure, it understands that to be the amount the lender requires for a release of its mortgage, especially when the payoff figure contains no other instructions.
Appellant's App. p. 49. Shackleford also averred that "Firstar never contacted Freedom Title to advise us that the payoff check and documents delivered with it were insufficient to obtain a release." Appellant's App. p. 49. On January 20, 2011, the trial court granted the Davidsons' summary judgment cross-motion and denied U.S. Bank's summary judgment motion.

DISCUSSION AND DECISION
When reviewing the grant or denial of a summary judgment motion, we apply the same standard as the trial court. Merchs. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc., 741 N.E.2d 383, 386 (Ind.Ct. App.2000). Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Id.; Ind. Trial Rule 56. All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. Id. To prevail on a motion for summary judgment, a party must demonstrate that the undisputed material facts negate at least one element of the other party's claim. Id. Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. Id. The party appealing the summary judgment bears the burden of persuading us that the trial court erred. Id.

I. Whether Indiana or Ohio Law Governs
U.S. Bank, pointing to language in the Agreement providing that "Ohio and Federal law govern the Lender's interest and charges[,]" contends that Ohio law governs all aspects of the Agreement and the Mortgage as well. Appellant's App. p. 60. U.S. Bank is essentially arguing that its interest in the Real Estate, as mortgagee, is the "interest" covered by the choice-of-law language in the Agreement. As the Davidsons point out, however, the Mortgage itself is entitled "Indiana Open-End Mortgage[;]" was executed in Fayette County, Indiana; and specifically refers to Indiana Code section 32-1-2-16 (now Indiana Code section 32-21-4-1) when detailing what effect future loans might have on the Mortgage's priority. Appellant's App. p. 22. We hardly think it likely that an instrument the parties intended to be governed by Ohio law would refer to no Ohio law but specifically refer to an Indiana statute.
Moreover, we cannot accept U.S. Bank's proposed interpretation of the meaning of "interest" in the Agreement, given its context.
When interpreting a contract, our paramount goal is to ascertain and effectuate the intent of the parties. This requires that the contract be read as a whole, and the language construed so as not to render any words, phrases, or terms ineffective or meaningless. When the language of a contract is clear and unambiguous, the intent of the parties is determined from the four corners of the instrument, giving the words contained *489 therein their plain, usual, and ordinary meaning. In such a situation, the terms are conclusive and we will not construe the contract or look at extrinsic evidence, but will merely apply the contractual provisions.
Crawford Cnty. Cmty. Sch. Corp. v. Enlow, 734 N.E.2d 685, 690 (Ind.Ct.App.2000) (citations omitted). Appearing, as it does, in a credit agreement, and in the immediate context of "charges," it is clear that the intended meaning of "interest" is that of "the compensation allowed by law or fixed by the parties for the use or forbearance of borrowed money" and not in the more general sense of referring to "a right, claim, title, or legal share in something." BLACK'S LAW DICTIONARY 812 (6th ed.1990). We conclude that the choice-of-law language in the Agreement governs only the "interest and charges" Star Bank and its successors were entitled to collect for the use of their borrowed money, and no other aspect of their relationship with the Seeleys. Star Bank could have easily made it clear in any number of ways that it intended Ohio law to govern the Mortgage and the entirety of the Agreement, but it did not.

II. Whether Firstar was Required to Release the Mortgage When the Seeleys' Then-Current Obligation was Paid
As previously mentioned, Freedom Title paid off the Seeleys' then-existing obligation to Firstar under the Agreement shortly after the sale of the Real Estate to the Robertses. The Davidsons argue that this payment and the circumstances surrounding it, for various reasons, obligated Firstar to release the Mortgage, which, of course, it did not do. U.S. Bank contends that the Seeleys were required to provide a statement of termination of the Agreement before it was bound to release the Mortgage.
Unlike a term note, a revolving line of credit is not automatically terminated when the balance is paid down to zero, because, as we have noted, "that would violate the very nature of the credit." Bank of America v. Ping, 879 N.E.2d 665, 670 (Ind.Ct.App.2008). Indeed, the Mortgage specifically recognized this in providing that it will secure
[f]uture obligations and advances up to the maximum amount in the mortgage (whether made as an obligation, made at the option of the lender ("Mortgagee"), made after a reduction to a zero (0) or other balance, or made otherwise) to the same extent as if the future obligations and advances were made on the date of the execution of the mortgage[.]
Appellant's App. p. 82 (emphasis supplied).
So, while the payment of October 8, 1999, did not automatically terminate the Agreement, it does not follow that the Agreement necessarily survived. The question is whether the designated evidence establishes that the parties intended that the payment terminate the Agreement. We conclude that it does. The Davidsons designated uncontradicted evidence that it is understood in the real estate world that "payoff" is the amount required to secure a release of the mortgage. The designated evidence also establishes that Freedom Title sent a request for a "payoff" amount, Firstar responded with a figure that it specifically referred to as a "payoff," Freedom Title remitted the specified amount, and Firstar accepted it.
Moreover, Freedom Title sent a letter with the check that read, in relevant part, "Please close account and release mortgage. This property has been sold." Appellant's App. p. 57. Although this letter left no doubt that Freedom Title intended the payment to at the very least result in a mortgage release, Firstar did nothing other *490 than accept and cash the mortgage payoff check tendered by Freedom Title. In the absence of any designated evidence that "payoff" has any meaning in the real estate context other than what is needed to secure release of a mortgage, the designated evidence establishes that the parties understood the October 8, 1999, payment to be a final payment on the Agreement, terminating it, which obligated Firstar to release the Mortgage.
U.S. Bank's relies on our decisions in Ping and Dreibelbiss Title Co. v. Fifth Third Bank, 806 N.E.2d 345 (Ind.Ct.App. 2004), cases in which we concluded, unlike here, that payments to zero of revolving lines of credit did not require release of the mortgages securing the lines of credit. Both Ping and Dreibelbiss, however, are readily distinguished. In Ping, in addition to paying the indebtedness, the mortgagor was specifically required to "terminate[] the Credit Agreement" before the mortgagee was required to release the mortgage, and the mortgagor took no such action. 879 N.E.2d at 670. Similarly, in Dreibelbiss, the mortgagor was required to also notify the mortgagee in writing that she wished to close the line of credit before the mortgagee was obligated to release the mortgage, and she failed to do so. 806 N.E.2d at 349. As previously mentioned, neither the Mortgage nor the Agreement contained any special requirements for release of the Mortgage or termination of the Agreement. Further distinguishing this case from Ping and Dreibelbiss is the fact that a specific request to release the Mortgage was made, even though not required. U.S. Bank's reliance on Ping and Dreibelbiss is therefore unavailing. We conclude that the trial court properly entered summary judgment in favor of the Davidsons.[1]
We affirm the judgment of the trial court.
ROBB, C.J., and BARNES, J., concur.
NOTES
[1] We need not address the Davidsons' arguments that the former version of Indiana Code section 32-29-1-1 obligated Firstar to release the Mortgage or that Firstar formed a binding contract to release the Mortgage.