**JPMORGAN CHASE BANK, as Trustee for Equity One ABS, Inc., Mortgage Pass–Through Certified Series # 2003–1, Appellant–Plaintiff,**

v.

**Curtis M. HOWELL and JPMorgan Chase Bank, N.A., Successor by Merger with Bank One, Indiana, N.A., f/k/a Bank One, Indiana, N.A., Appellees–Defendants.**

No. 02A03–0702–CV–74.

Court of Appeals of Indiana.

Nov. 21, 2007.

A. Donald Wiles, II, Tammy L. Ortman, David I. Rubin, Harrison & Moberly, LLP, Indianapolis, IN, Attorneys for Appellant.

Michael J. Chapman, Javitch, Block & Rathbone LLP, Cincinnati, OH, Attorney for Appellee JPMorgan Chase Bank, N.A.

## OPINION

CRONE, Judge.

### Case Summary

JPMorgan Chase Bank, as trustee for Equity One ABS, Inc., Mortgage Pass–

Through Certified Series # 2003–1 ("Equity One") appeals the denial of its request for entry of summary judgment and the granting of the summary judgment motion of JPMorgan Chase Bank, N.A., successor by merger with Bank One, N.A., f/k/a Bank One, Indiana, N.A. ("Bank One"), which resulted in a decree of foreclosure and an in rem judgment in Bank One's favor. We reverse and remand.

### Issue

Is Equity One entitled to equitable subrogation?

### Facts and Procedural History

The relevant facts are undisputed. On May 24, 2002, Curtis M. Howell executed and delivered to Accredited Home Lenders, Inc. ("Accredited"), a promissory note and mortgage in the principal amount of $149,000, thereby granting Accredited a security interest in real property commonly known as 9242 Wayne Trace Road in Fort Wayne. The promissory note and mortgage were subsequently assigned to Equity One.[1] Using proceeds of the promissory note, "Equity One paid off a first conventional mortgage in favor of Irwin Mortgage ["Irwin"], which mortgage was released." Appellant's App. at 93 (Bank One's response to Equity One's request for entry of summary judgment). The payoff amount of Irwin's mortgage was $76,515.46. *Id.* at 65 (settlement statement). The record is silent as to when Irwin's mortgage was executed and recorded.

Equity One then attempted to pay off a "second mortgage encumbering the property[,]" which was held by Bank One. *Id.* at 93 (Bank One's response to Equity One's request for entry of summary judg-

ment). Bank One's mortgage was executed on October 5, 1999, and recorded on October 15, 1999. Bank One's mortgage states,

> [T]his Mortgage secures a revolving line of credit, which obligates Lender to make future obligations and advances to Grantor up to a maximum amount of $42,464.00 so long as Grantor complies with all the terms of the Credit Agreement. . . . It is the intention of Grantor and Lender that this Mortgage secures the balance outstanding under the Credit Agreement from time to time from zero up to the Credit Limit as provided above and any intermediate balance.

*Id.* at 86–87. Bank One's mortgage further states, "The lien of this Mortgage securing the indebtedness may be secondary and inferior to the lien securing payment of an existing obligation. The existing obligation has a current principal balance of approximately $77,536.00." *Id.* at 88.

On May 8, 2002, Equity One's closing agent, Nations Title Agency of Indiana ("Nations Title"), received a payoff statement for Bank One's mortgage. The payoff statement shows a current payoff balance of $42,554.90, with per diem interest of $7.23. *Id.* at 68. The payoff statement reads in pertinent part,

> If the payoff is made after the date shown above as "Today's Payoff Amount" [May 8, 2002] please, add the daily interest (per diem) per day to the listed payoff amount. Please note the following information when obtaining a payoff for an existing line of credit amount:

---

1. Accredited assigned its promissory note and mortgage to Popular Financial Services, LLC ("Popular"), on May 31, 2002. This assignment was recorded on March 22, 2004. Popular assigned the promissory note and mort-

gage to Equity One on February 28, 2003. This assignment was recorded on May 25, 2004, and re-recorded on August 31, 2004. For simplicity's sake, we refer to Equity One's predecessors in interest as "Equity One."

□ The payoff balance may not include advances relating to unposted line of credit checks, credit card transactions and other such advances as well as charged back payments due to returned checks or ACH debits. We recommend that you call us the day of your line payoff to ensure you have an accurate amount for the entire line balance.

□ If you want to close a Line of Credit, we must receive this request in writing signed by an authorized signer on the line. For your convenience, we have enclosed the Authorization to Close Credit Line. Please sign the attached document and send it along with your payoff if you want to close your line.

*Id.*

Several weeks later, Nations Title prepared a letter of direction signed by Howell and delivered it to Bank One with a check payable to Bank One dated May 30, 2002. The letter of direction states in pertinent part,

Enclosed please find check # 02016353 in the amount of $42,400.40. This check represents payment towards the indebtedness secured by the above mentioned encumbrance. . . . In the event said encumbrance secures a revolving credit loan, you are hereby directed to close my account.

. . . .

You are hereby directed to apply the enclosed funds to the reduction of my loan upon receipt of this check. In the event these funds are insufficient to satisfy the indebtedness for any reason, you are directed to apply the enclosed check and any excess funds you now hold for me in escrow to pay any balance due, and return any excess to the above address, as soon as possible. If there is still a shortage, the borrower agrees to pay the shortage upon request from the lender or Nations Title Agency of Indiana.

You are further directed to notify the undersigned within twenty-four hours to indicate the amount of, and for any reason, any shortage of funds. Borrower agrees to resolve any and all shortages with the lender within and not withstanding [sic] thirty days from date of notification. Please fax your notification to Nations Title Agency of Indiana, to the attention of the Closing Department[.]

*Id.* at 71.

The payoff amount sent to Bank One was short by slightly over $300.00.[2] Bank One negotiated the check[3] but did not inform Nations Title of the shortfall and did not close Howell's line of credit. Howell continued to make payments and withdrawals on the line of credit and ultimately accrued a final balance of $42,235.63 as of February 3, 2005. Appellee's App. at 12 (affidavit of Bank One foreclosure specialist Kelly Zamitalo).

---

**2.** Equity One asserts that the shortfall was $320.79. Appellant's Br. at 5 (citing Appellant's App. at 58). Bank One asserts that the shortfall was $328.06. Appellee's Br. at 3 (citing Appellant's App. at 95). A handwritten calculation on Bank One's payoff statement, presumably made by a Nations Title employee, indicates that twenty-three days' worth of per diem interest ($166.29) was added to the principal balance of $42,234.11,

rather than to the payoff balance of $42,554.90, thereby resulting in a shortfall of $320.79. Appellant's App. at 68.

**3.** Bank One asserts that it applied the check to "Howell's outstanding balance owing on his credit account." Appellee's Br. at 3. Bank One cites no authority to support this assertion, but Equity One does not dispute this.

Howell defaulted on the promissory notes and mortgages held by Equity One and Bank One and received a discharge in bankruptcy. On January 20, 2005, Equity One filed against Howell[4] and Bank One a complaint on note and to foreclose mortgage on real estate, seeking foreclosure of its mortgage and a declaration that its mortgage was a "valid and enforceable first priority lien against the mortgaged property." *Id.* at 23. Bank One filed an answer and cross claim asserting that its mortgage was a first priority lien. Bank One filed a motion for summary judgment, to which Equity One filed a response and a request for entry of summary judgment in its favor.[5] On September 12, 2006, the trial court entered an order granting Bank One's motion for summary judgment and denying Equity One's request for entry of summary judgment. On January 23, 2007, the trial court entered a decree of foreclosure and an in rem judgment in favor of Bank One and against Howell in the amount of $49,701.25. Equity One now appeals.

### Discussion and Decision

Equity One contends that the trial court erred in granting Bank One's motion for summary judgment and in denying its request for entry of summary judgment in its favor.

> Summary judgment is a procedural means to halt litigation when there are no factual disputes and to allow the case to be determined as a matter of law. Under Indiana Trial Rule 56, the moving party bears the burden of showing that there are no genuine issues of material fact. If the moving party meets its burden, the burden shifts to the non-moving party to set forth facts showing the existence of a genuine issue for trial. Ind. Trial Rule 56(C), 56(E).
>
> Summary judgment is appropriate only if there is no evidence of a genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law. . . . [W]hen a party files a motion for summary judgment, that movant bears the risk of entry of summary judgment in favor of the non-movant, even though the non-movant has not filed a cross-motion for summary judgment. Ind. Trial Rule 56(B).

*Shah v. Harris,* 758 N.E.2d 953, 955 (Ind. Ct.App.2001) (quotation marks and some citations omitted), *trans. denied* (2002). Where the facts are undisputed,

> our review is de novo, and we will reverse the grant of summary judgment if the record discloses an incorrect application of the law to the facts. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper.

*Gibson–Lewis, LLC v. Teachers Credit Union,* 854 N.E.2d 392, 394 (Ind.Ct.App. 2006) (citations omitted), *trans. denied* (2007).

Indiana Code Section 32–21–4–1(b) provides,

> A conveyance, mortgage, or lease takes priority according to the time of

---

**4.** According to Bank One, Howell "failed to appear or otherwise defend himself in the lower court action." Appellee's Br. at 4.

**5.** Equity One did not consider its request for entry of summary judgment to be a cross motion for summary judgment. *See* Appellant's App. at 74 ("Although Equity One has not filed a Cross Motion for Summary Judgment, '[w]hen any party has moved for summary judgment, the court may grant summary judgment for any other party upon the issues raised by the motion although no motion for summary judgment is filed by such party.' ") (citations omitted).

its filing. The conveyance, mortgage, or lease is fraudulent and void as against any subsequent purchaser, lessee, or mortgagee in good faith and for a valuable consideration if the purchaser's, lessee's, or mortgagee's deed, mortgage, or lease is first recorded.

At first glance, it appears that Bank One's mortgage, recorded in October 1999, should take priority over Equity One's mortgage, recorded in May 2004, by operation of statute.

■ Equity One, however, contends that in light of the undisputed facts, the trial court should have given its mortgage priority over Bank One's mortgage based on the doctrine of equitable subrogation, which we have described as "a highly favored doctrine, which is to be given a liberal application." *Osterman v. Baber*, 714 N.E.2d 735, 738 (Ind.Ct.App.1999), *trans. denied.* "Subrogation arises from the discharge of a debt and permits the party paying off a creditor to succeed to the creditor's rights in relation to the debt." *Bank of New York v. Nally*, 820 N.E.2d 644, 651 (Ind.2005).[6] "[T]he application of the doctrine of equitable subrogation depends on the equities and attending facts and circumstances of each case." *Id.* at 654.

In the case of a purchaser of a note and mortgage for value, the classic formulation is that the purchaser's right of subrogation to the mortgage he or she discharged includes its priority over junior liens of which he or she did not have actual knowledge, and where he or she was not culpably negligent in failing to learn of the junior lien.

*Id.* at 651 (citation, brackets, and quotation marks omitted).

■ In *Nally*, however, our supreme court concluded that "a mortgagee who refinances an existing mortgage is entitled to equitable subrogation even if it had actual or constructive knowledge of an existing lien on the property unless the junior lienholder is disadvantaged or the mortgagee is 'culpably negligent[.]'" *Id.* at 653–54.[7] Here, Equity One contends that it is entitled to equitable subrogation on the following grounds: (1) Equity One refinanced Irwin's mortgage, which was senior to Bank One's mortgage; (2) Bank One would not be disadvantaged, in that its position as junior lienholder would remain unchanged; and (3) Equity One was not culpably negligent.

■ We agree. To the extent Bank One claims that its mortgage was superior to Irwin's mortgage, we concur with Equity One that Bank One's unequivocal statement to the contrary in its response to Equity One's request for entry of summary judgment constitutes a judicial admission that is binding on Bank One. *See* Appellant's App. at 93 ("It is not in dispute

---

6. Indiana Code Section 32–29–1–11 recognizes the doctrine of equitable subrogation:
    (d) Except for those instances involving [mechanic's liens], a mortgagee seeking equitable subrogation with respect to a lien may not be denied equitable subrogation solely because:
    (1) the mortgagee:
    (A) is engaged in the business of lending; and
    (B) had constructive notice of the intervening lien over which the mortgagee seeks to assert priority;

    (2) the lien for which the mortgagee seeks to be subrogated was released; or
    (3) the mortgagee obtained a title insurance policy.

7. In so holding, the *Nally* court noted that "[a] lender providing funds to pay off an existing mortgage expects to receive the same security as the loan being paid off." 820 N.E.2d at 653.

that Equity One refinanced a home mortgage for [Howell on the property in issue]. Equity One paid off a first conventional mortgage in favor of Irwin Mortgage, which mortgage was released. Bank One, at that time, held a properly recorded second mortgage encumbering the property in issue."); *Harris v. Traini*, 759 N.E.2d 215, 222 (Ind.Ct.App.2001) (holding that defense counsel's concession during summary judgment hearing as to deceased's invitee status was binding on clients), *trans. denied* (2002).[8] Bank One wisely does not argue that it would be disadvantaged by equitable subrogation. *See Nally*, 820 N.E.2d at 653 (stating that junior lienholders " 'can hardly complain' " of equitable subrogation, " 'for it does not harm them; their position is not materially prejudiced, but is simply unchanged.' ") (quoting RESTATEMENT (THIRD) OF PROP.: MORTGAGES § 7.6 cmt. e). Finally, any negligence in Equity One's failure to confirm whether it had fully satisfied Bank One's mortgage—a failure for which Bank One bears some responsibility—did not prejudice Bank One and in fact benefited Bank One to the tune of over $42,000. In sum, Equity One was not culpably negligent. *See id.* at 655 ("Equity should not

allow the [junior] mortgage to gain an unexpected elevated priority status because of the negligence of [the senior lienholder's subrogee] or its assignee that did the [junior lienholder] no harm.").[9]

■ "Equitable subrogation is a remedy to avoid an unearned windfall." *Id.* at 653. Allowing Bank One's lien to take priority over Equity One's lien would result in an unearned windfall to Bank One, which had notice of the possible existence of a senior lien when it executed and recorded its mortgage. Based on the foregoing, we find that Equity One is entitled to equitable subrogation and that the trial court erred in denying Equity One's request for entry of summary judgment in its favor.[10] We reverse the trial court's grant of Bank One's summary judgment motion and remand with instructions to enter summary judgment in Equity One's favor and for further proceedings consistent with this opinion.[11]

Reversed and remanded.

DARDEN, J., and MAY, J., concur.

8. Bank One contends that Equity One did not sufficiently raise the issue of equitable subrogation before the trial court. We disagree. Equity One's request for entry of summary judgment includes a three-page discussion of the doctrine and our supreme court's opinion in *Nally*. Appellant's App. at 77–80. Equity One also mentioned the doctrine in its response to Bank One's summary judgment motion. *Id.* at 59–60. We note that Bank One provided the "smoking gun" for the application of equitable estoppel by admitting to the seniority of Irwin's mortgage in its response to Equity One's request for entry of summary judgment.

9. The *Nally* court stated that "[a] volunteer or one charged with 'culpable negligence' may not be entitled to equitable subrogation." 820 N.E.2d at 654. Equity One did not vol-

untarily pay Howell's debt to Irwin; rather, Equity One "had a direct interest in paying [Irwin's mortgage] to protect [its] rights to the property." *Gibson v. Neu*, 867 N.E.2d 188, 200 (Ind.Ct.App.2007).

10. Because we find that Equity One is entitled to equitable subrogation, we need not address Equity One's argument that the trial court should have entered summary judgment in its favor based on the doctrine of equitable estoppel. We note that Bank One raises numerous objections to the applicability of equitable subrogation, all of which disregard its admission to being a junior lienholder and our supreme court's analysis in *Nally*.

11. Equity One states that it "is not seeking equitable subrogation for the entire balance of its Mortgage, but rather is only seeking equi-

table subrogation of the amount paid to satisfy the Irwin Mortgage ($76,515.46) plus applicable interest." Appellant's Reply Br. at 9 n. 3.