**FOR PUBLICATION**



ATTORNEY FOR APPELLANT:

**JEFFREY K. GRAHAM**
Bingham Farrer & Wilson, P.C.
Elwood, Indiana

ATTORNEYS FOR APPELLEE:

**CRAIG D. DOYLE**
**KURT V. LAKER**
Doyle Legal Corporation, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| FINANCE CENTER FEDERAL CREDIT UNION, | ) ) ) | |
| Appellant-Defendant, | ) ) | |
| vs. | ) ) | No. 49A02-1111-MF-1089 |
| RONNIE D. BRAND, DEBORA J. BRAND and GMAC MORTGAGE, LLC, | ) ) ) ) | |
| Appellee-Plaintiff. | ) ) ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Cynthia J. Ayers, Judge
The Honorable Burnett Caudill, Magistrate
Cause No. 49D04-0909-MF-42341

**May 24, 2012**

**OPINION - FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Ronnie D. Brand and Debora J. Brand (collectively, "the Brands") refinanced their first and second mortgages with GMAC Mortgage, LLC. Despite GMAC fully paying off the Brands' first and second mortgages as part of the refinancing process, the Brands' second mortgage – a home equity line of credit with Finance Center Federal Credit Union – was never released. Finance Center later advanced additional funds to the Brands. When the Brands thereafter defaulted on the GMAC mortgage, a dispute erupted over the priority of the GMAC and Finance Center mortgages. The trial court entered partial summary judgment in favor of GMAC, finding that the GMAC mortgage had first priority pursuant to the doctrine of equitable subrogation. Finance Center now appeals, arguing that the GMAC mortgage does not have first priority because GMAC was "culpably negligent." Concluding that equity should not allow the Finance Center mortgage to gain an unexpected elevated priority because of any negligence of GMAC that did Finance Center no harm, we affirm.

**Facts and Procedural History**

In 1989, the Brands acquired title to 8732 Deer Run Drive in Indianapolis by means of a warranty deed. Over a decade later, on July 12, 2002, the Brands executed and delivered to Meridian Group Mortgage Corp. a mortgage securing repayment of a loan in the principal amount of $107,200 ("Meridian Group mortgage"). This mortgage was recorded on July 19, 2002.

On July 23, 2002, the Brands granted a second mortgage to Finance Center securing repayment of a $25,000 home equity line of credit ("Finance Center mortgage"). This second mortgage was recorded on September 24, 2002.

In March 2007, the Brands refinanced their mortgages with First Republic Mortgage Corporation. In anticipation of the refinance, Stewart Title Services of Indiana performed a title search that revealed the two existing mortgages. Stewart Title requested payoff statements from both Meridian Group and Finance Center. Meridian Group provided a payoff amount of $103,769.57. Finance Center provided a payoff statement.

Closing occurred on March 30, 2007. The Brands executed a note and mortgage in favor of First Republic in the principal amount of $163,516.99. First Republic later assigned its interest to GMAC.[1] This mortgage ("GMAC mortgage") was recorded on April 13, 2007. Proceeds from the GMAC mortgage were used to pay off the Meridian Group and Finance Center mortgages. Stewart Title sent payment in the amount of $103,769.57 in full satisfaction of the Meridian Group mortgage. Meridian Group then released the mortgage. Stewart Title also sent two checks to Finance Center – one for $25,175.07 and the other for $10,399.76 – in order to fully satisfy the amounts the Brands owed to Finance Center at the time, including their line of credit. GMAC, as the refinancing lender, intended to obtain a first-priority lien on the real estate. GMAC would not have made the loan unless its mortgage had first priority.

Although the payments received from the closing of the GMAC mortgage fully satisfied the Brands' obligation to Finance Center at the time, Finance Center did not

---

[1] Although the assignment did not occur until August 28, 2009, we refer to GMAC for sake of clarity.

release the mortgage. Notably, the Finance Center mortgage and the underlying note each contain a provision requiring the borrower to send notice requesting release of the lien. *See* Appellant's App. p. 24 ("You are required to give 15 days prior written notice of your account is to be paid off and closed [sic] all unused drafts returned with the notice."), 28 ("The Secured Debt includes a revolving line of credit. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released."). Because notice was apparently not sent to Finance Center with the payoff checks, Finance Center left the line of credit open and later advanced additional funds to the Brands.

In September 2009, GMAC filed a Complaint on Note and to Foreclose Mortgage on Real Estate against the Brands and Finance Center. GMAC alleged that the Brands defaulted pursuant to the terms of the note and the mortgage by failing to tender the monthly mortgage payment as promised. *Id.* at 7. GMAC also alleged that Finance Center "may assert an interest in the subject property by virtue of a mortgage executed by [the Brands] to [Finance Center] on July 23, 2002 and recorded on [September] 24, 2002 . . . ." *Id.* at 8. GMAC, however, claimed that its mortgage was first in priority. *Id.*

Finance Center filed a cross-complaint and counterclaim. Finance Center alleged that it was due $25,215.69 plus interest and that its mortgage, not GMAC's, was first in priority. *Id.* at 22.

In December 2010, Finance Center filed a motion for summary judgment seeking to establish and foreclose a first-priority lien on the real estate. GMAC filed a cross-motion for partial summary judgment seeking only to establish the priority of its

4

mortgage over the Finance Center mortgage. A hearing was held at which the parties argued whether the doctrine of equitable subrogation allowed GMAC to place its mortgage into the shoes of the Meridian Group mortgage and retain its priority. The trial court granted partial summary judgment in favor of GMAC:

> GMAC is entitled to a first lien against the real estate at issue in this action in the amount of $103,769.57, plus interest on that amount from March 30, 2007, through the date of judgment at the rate of 6.25 percent per year, which lien shall have priority over the mortgage lien asserted by Finance Center Federal Credit Union. This entry of partial summary judgment shall not adjudicate or prejudice any rights of GMAC to seek foreclosure of its mortgage in the future. The Court expressly finds that there is no just reason for delay, and directs that this entry of partial summary judgment shall be a final judgment as to the issues decided, pursuant to Trial Rule 54(B).

*Id.* at 4-5.

Finance Center now appeals.

## Discussion and Decision

Finance Center contends that the trial court erred in granting partial summary judgment in favor of GMAC. Specifically, Finance Center argues that GMAC is not entitled to a first lien against the real estate pursuant to the doctrine of equitable subrogation because GMAC was "culpably negligent."

We review a summary judgment order de novo. *Bules v. Marshall Cnty.*, 920 N.E.2d 247, 250 (Ind. 2010). The purpose of summary judgment is to end litigation about which there can be no factual dispute and which may be determined as a matter of law. *Shelter Ins. Co. v. Woolems*, 759 N.E.2d 1151, 1153 (Ind. Ct. App. 2001), *trans. denied.* We must determine whether the evidence that the parties designated to the trial court presents a genuine issue of material fact and whether the moving party is entitled to

a judgment as a matter of law. Ind. Trial Rule 56(C); *Bules*, 920 N.E.2d at 250. We construe all factual inferences in the nonmoving party's favor and resolve all doubts as to the existence of a material issue against the moving party. *Bules*, 920 N.E.2d at 250.

Our Supreme Court redefined the doctrine of equitable subrogation, which has been recognized in Indiana for more than a century, in *Bank of New York v. Nally*, 820 N.E.2d 644, 651 (Ind. 2005). "The nature of equitable subrogation is, as its name indicates, equity." *Neu v. Gibson*, 928 N.E.2d 556, 560 (Ind. 2010). "Subrogation arises from the discharge of a debt and permits the party paying off a creditor to succeed to the creditor's rights in relation to the debt." *Nally*, 820 N.E.2d at 651 (citation omitted). In other words, "[t]he doctrine substitutes one who fully performs the obligation of another, secured by a mortgage, for 'the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment.'" *Neu*, 928 N.E.2d at 560 (quoting Restatement (Third) of Property § 7.6(a) (1997)); *see also Nally*, 820 N.E.2d at 653. "This avoids an inequitable application of the general principle that priority in time gives a lien priority in right." *Neu*, 928 N.E.2d at 560 (citation omitted). "In considering whether to order subrogation and thus bypass the general principle of priority, courts base their decisions on the equities, particularly the avoidance of windfalls and the absence of any prejudice to the interests of junior lienholders." *Id.*; *see also Nally*, 820 N.E.2d at 653. Equitable subrogation is "'a highly favored doctrine, which is to be given a liberal application.'" *Nally*, 820 N.E.2d at 652 (quoting *Osterman v. Baber*, 714 N.E.2d 735, 738 (Ind. Ct. App. 1999), *trans. denied*).

In *Nally*, our Supreme Court quoted the following excerpt from the Third Restatement of Property:

> "Perhaps the case occurring most frequently is that in which the payor [i.e. the party asserting a right to equitable subrogation] is actually given a mortgage on the real estate, but in the absence of subrogation it would be subordinate to some intervening interest, such as a junior lien. Here subrogation is entirely appropriate, and by virtue of it the payor has the priority of the original mortgage that was discharged. This priority is often of critical importance, since it will place the payor's security in a position superior to intervening liens and other interests in the real estate. The holders of such intervening interests can hardly complain of this result, for it does not harm them; their position is not materially prejudiced, but is simply unchanged."

*Id.* at 653 (quoting Restatement (Third) of Property § 7.6 cmt. e). Our Supreme Court agreed with this portion of the Restatement as it applied to a conventional refinancing:

> A lender providing funds to pay off an existing mortgage expects to receive the same security as the loan being paid off. Refinancings are commonplace in today's economy. Permitting a junior lienholder to leapfrog the priority of the current senior mortgage would impair the owner's access to more favorable interest rates. Unless a junior lienholder is disadvantaged by permitting subrogation, we see no reason to give the junior lienholder in effect the right to block or object to the refinancing. We conclude that a mortgagee who refinances an existing mortgage is entitled to equitable subrogation even if it had actual or constructive knowledge of an existing lien on the property unless the junior lienholder is disadvantaged or the mortgagee is "culpably negligent" . . . , but this remedy is subject to the rights and limitations of the subrogor.

*Id.* at 653-54. Accordingly, as long as the refinancing lender is not culpably negligent, the refinancing lender is entitled to stand in the shoes of the senior lien and retain its priority status. *Id.* at 654.

Here, it is undisputed that as part of the refinancing process, GMAC paid off the Meridian Group mortgage in full and the lien was discharged. And notably, Finance Center does not argue that its mortgage was somehow superior to the Meridian Group

7

mortgage. Accordingly, unless Finance Center was prejudiced or GMAC was "culpably negligent," GMAC, as the refinancing lender, is entitled to stand in the shoes of Meridian Group to the extent of its $103,769.57 payoff. Finance Center, however, argues that GMAC was culpably negligent.

A volunteer or one charged with "culpable negligence" may not be entitled to equitable subrogation. *Id.* Culpable negligence "contemplates action or inaction which is more than mere inadvertence, mistake or ignorance" and "focuses on the activity of the party asserting subrogation." *Id.* (quotation omitted). Although preserving the rights of intervening creditors who record their interests is "plainly equitable," leapfrogging a senior claim is "precisely what equitable subrogation is designed to prevent." *Id.* at 655.

Finance Center claims that GMAC was culpably negligent in failing to obtain a release of the Finance Center mortgage and that this negligence bars equitable subrogation. We addressed a similar issue in *JPMorgan Chase Bank v. Howell*, 883 N.E.2d 106 (Ind. Ct. App. 2007), and found no culpable negligence in the refinancing lender's failure to ensure that it had properly paid off the junior line-of-credit mortgage.[2]

In *Howell*, Howell refinanced his real estate, which was subject to a senior conventional mortgage and a junior line-of-credit mortgage. The refinancing lender paid off the senior mortgage in full and attempted to pay off the junior line-of-credit mortgage. However, the refinancing lender's payoff of the junior line-of-credit mortgage was $300 short; accordingly, the line of credit remained opened. After additional funds were drawn

---

[2] Finance Center argues that two additional cases from this Court are dispositive, but we find them distinguishable on several grounds. *See Bank of Am., N.A. v. Ping*, 879 N.E.2d 665 (Ind. Ct. App. 2008); *Liberty Mortg. Grp. v. Nat'l City Bank*, 755 N.E.2d 639 (Ind. Ct. App. 2001), *trans. denied*. One of these distinguishing grounds is that the line-of-credit lenders in *Liberty Mortgage* and *Ping* had senior liens. Here, however, the line-of-credit lender, Finance Center, had a junior lien.

from the line of credit (with a final balance of $42,235.63), a priority dispute erupted. In addressing the line-of-credit lender's culpable-negligence argument, we held:

> [A]ny negligence in [the refinancing lender's] failure to confirm whether it had fully satisfied [the line-of-credit] mortgage—a failure for which [the line-of-credit lender] bears some responsibility[3]—did not prejudice [the line-of-credit lender] and in fact benefited [the line-of-credit lender] to the tune of over $42,000. In sum, [the refinancing lender] was not culpably negligent. *See* [*Nally*, 820 N.E.2d] at 655 ("Equity should not allow the [junior] mortgage to gain an unexpected elevated priority status because of the negligence of [the senior lienholder's subrogee] or its assignee that did the [junior lienholder] no harm.").

*Howell*, 883 N.E.2d at 112.

The same can be said here. That is, any negligence in GMAC's failure to ensure that the Brands' second mortgage with Finance Center was released did not prejudice Finance Center because the Finance Center mortgage was always junior to the senior Meridian Group mortgage, which was fully satisfied with the loan proceeds from the GMAC refinancing. Allowing GMAC to step into the shoes of the Meridian Group mortgage will leave Finance Center in the very same junior position. This is a clearly equitable result. *See Nally*, 820 N.E.2d at 655 ("The mere fact that a person seeking subrogation was negligent does not bar him or her from relief where such negligence is as to his or her own interests and does not affect prejudicially the interest of the person to whose rights subrogation is sought." (quotation omitted)). Although GMAC failed to ensure that the Brands gave proper notice to Finance Center to release the lien, GMAC was not culpably negligent. The doctrine of equitable subrogation thus applies to this

---

[3] This is an apparent reference to the fact that that the line-of-credit lender did not advise the refinancing lender of the $300 shortfall in the attempted payoff. Likewise, GMAC argues here that Finance Center bore some responsibility in this case for not including instructions for closing the line of credit with its payoff statement. Appellee's Br. p. 14 n.7.

case.  Accordingly, we affirm the trial court's grant of partial summary judgment in favor of GMAC.

Affirmed.

CRONE, J., and BRADFORD, J., concur.