## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 02 2015, 9:19 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

---

ATTORNEY FOR APPELLANTS

F. Harrison Green
Cincinnati, Ohio

ATTORNEY FOR APPELLEE

J. Dustin Smith
Plunkett Cooney, P.C.
Indianapolis, Indiana

---

IN THE
# COURT OF APPEALS OF INDIANA

---

The Lewallen Revocable Trust, et al.,

*Appellants-Defendants,*

v.

Fifth Third Mortgage Company,

*Appellee-Plaintiff.*

June 2, 2015

Court of Appeals Cause No.
15A01-1409-MF-396

Appeal from the Dearborn Circuit Court.

The Honorable James D. Humphrey, Judge.

Cause No. 15C01-1102-MF-38

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellants-Defendants, the Lewallen Revocable Trust, *et al.* (Trust), appeal the trial court's Amended *In rem* Judgment and Decree of Foreclosure in favor of Appellee-Plaintiff, Fifth Third Mortgage Company (Fifth Third).

We affirm in part and reverse in part.

## ISSUES

The Trust raises four issues which we consolidate and restate as the following two:

(1) Whether the trial court erred when it deemed the Trust continued to exist after the Trust's one-half interest in the real estate devolved in Randall C. Lewallen (Randall), holder of the other one-half interest in the real estate, as the sole trustee and sole beneficiary; and

(2) Whether the trial court erred in concluding that Fifth Third is entitled to a decree of foreclosure as to Randall's one-half interest in the real estate.

## FACTS AND PROCEDURAL HISTORY

On June 28, 2004, Hugh Lewallen (Hugh) and Kay Lewallen (Kay) created the Lewallen Revocable Trust (Trust), in which Kay was appointed as the Trustee.

The Trust Agreement granted the Trustee the right to borrow and secure payments of loans by pledging or mortgaging the property in the Trust. Randall, Hugh's and Kay's son, is the sole beneficiary under the Trust.

[4] On November 5, 2004, Hugh and Kay conveyed the real estate, commonly known as 21596 Weisburg Road, in Sunman, Indiana (the Property) to the Trust via warranty deed. Less than three weeks after deeding the Property to the Trust, Hugh and Kay, as Trustee, executed and delivered a $50,000 mortgage to Fifth Third Bank, which is the receiver for Fifth Third.

[5] On December 21, 2004, Kay, as Trustee, deeded a life estate in the Property to Hugh and herself via Trustee's Deed. On the same day, Kay, as Trustee, quit-claimed a one-half interest in the Property to Randall via quitclaim deed, which was duly recorded.[1] After the recordation of the quitclaim deed, the Trust and Randall each held a one-half remainder interest in the Property, while Hugh and Kay held a life estate—all of which was subject to Fifth Third's mortgage in the amount of $50,000. Randall understood that when he accepted the quitclaim deed, his one-half interest in the Property was subject to a mortgage

---

[1] In accordance with the provisions of the Trust, the Trustee can "convey . . . transfer or exchange any property held in the trust estates at any time at such prices and upon such terms and conditions and in such manner as it may, in its sole discretion, deem advisable." (Tr. Exh. H). Also, the Trustee is allowed to "make, execute and deliver all contracts, deeds, assignments, powers and other instruments, and to do, in general, any and all things for the preservation and management of the trust estates which it may, in its sole discretion, deem advisable." (Tr. Exh. H).

and that, upon the passing of his parents, he would have to continue making the mortgage payments.

[6] In the summer of 2005, Kay sought to refinance the debt underlying the $50,000 mortgage. In contemplation of entering into a mortgage-loan, Fifth Third intended the forthcoming mortgage to be in first lien position and fully secure in the Property. At the time of the refinancing, Randall was aware that his mother was seeking another mortgage on the Property but considered this to be "her deal," which did not matter to him. (Appellants' App. p. 296). Thus, on July 21, 2005, Kay, individually and as power of attorney for Hugh, closed on the refinance with her execution and delivery of a $100,000 Note to Fifth Third. As security for the Note, Kay, as Trustee, executed and delivered a $100,000 mortgage to Fifth Third, with the mortgage being duly recorded. Even though Randall drove Kay to the closing of the loan documents, he did not inform Fifth Third of his one-half interest in the Property.

[7] After the initial closing, it was discovered that Kay, in her individual capacity, Hugh, and Randall had not executed the mortgage. In a situation where not all the parties with an interest in the real estate execute the mortgage, it is Fifth Third's custom to return the original, executed mortgage to the title company and have the mortgage executed by all persons having an interest in the real estate. At some point after the initial closing, Hugh and Kay, in her individual capacity, executed the $100,000 mortgage. Although Randall's signature purports to appear on the $100,000 mortgage, Randall denies ever having executed the document. After its second execution, the mortgage was re-

recorded. The proceeds underlying the $100,000 Note and mortgage satisfied the $50,000 mortgage to Fifth Third Bank; paid down over $20,000 in unsecured debts owed by Kay and Hugh; and resulted in $27,160.72 being deposited in Randall's bank account, which he spent in less than five months.

[8] Hugh and Kay both passed away in 2010. After their deaths, the life estate reserved for Hugh and Kay terminated, such that the title to the Property became vested in the Trust, as to a one-half interest, and in Randall, as to a one-half interest. Pursuant to the terms of the Trust, the Trust's one-half interest in the Property was bequeathed to Randall, making him both the Trustee and the sole beneficiary of the Trust's assets. The Note and mortgage went into default shortly after Hugh and Kay passed away. On January 17, 2011, Fifth Third mailed a notice of default to Kay and Hugh at a PO Box in Sunman, Indiana.

[9] On February 24, 2011, Fifth Third filed its Complaint against Kay, Hugh, Randall, and Unknown Occupants, seeking to foreclose the $100,000 mortgage against the Property. On April 25, 2011, Fifth Third filed its Amended Complaint, adding the Trust as a party to the cause. On May 17, 2011, Randall filed his Answer to the Amended Complaint, as well as a counterclaim, asserting that his signature on the $100,000 was forged and seeking damages for spoliation of evidence, defamation, malicious prosecution, and fraud. Fifth Third filed its Reply to the counterclaim on June 7, 2011, followed by an Amended Reply nine days later. On June 16, 2014, the trial court conducted a hearing on the Complaint and counterclaim. On August 26, 2014, the trial court entered an Amended *In Rem* Judgment and Decree of Foreclosure in the

principal amount of $92,920.09 in favor of Fifth Third. The trial court concluded, in pertinent part:

> B. As to [the Trust's] ½ interest in the [Property], [Fifth Third] is hereby granted a Decree of Foreclosure declaring its [m]ortgage to be facially valid as to said ½ interest in the [Property] (hereinafter referred to as "the Mortgaged Property"); (2) foreclosing the equity of redemption of each Defendant in the Mortgaged Property, and any person or entity claiming from, under or through any named Defendant, upon expiration of the redemption period, (3) ordering the Sheriff of this County to sell the Mortgaged Property to satisfy the sums due and owing to [Fifth Third] pursuant to this judgment as soon as said sale can be had under the laws of the jurisdiction governing foreclosure sales of Mortgaged Property; (4) ordering the Sheriff of this County or his/her representative to accept notice of cancellation from [Fifth Third] prior to the time of the scheduled sale without further order of court; (5) instructing the Sheriff of this County to issue a proper deed or deeds to the purchaser(s) at said sale; (6) authorizing [Fifth Third] to bid for the Mortgaged Property or any part thereof with the indebtedness due to it pursuant to this judgment, said indebtedness to be credited to the bid of [Fifth Third]; (7) declaring the sale to be conducted without relief from valuation and appraisement laws; (8) ordering that the proceeds generated from said sale be distributed pursuant to [Ind Code] § 32-30-10-14, first to the costs of the Sheriff's Sale and any real estate taxes due and owing relating to the Mortgaged Property, second to [Fifth Third] to satisfy the sums due and owing pursuant to this judgment.
>
> C. As to [Randall's] ½ interest in the [Property], [Fifth Third] is granted a decree of foreclosure as a result of [Randall] being estopped from retaining the benefit of the loan proceeds underlying the $100,000 Note and mortgage such that [Fifth Third] is entitled to foreclose the first $27,160.72 of sheriff's sale proceeds as to said ½ interest.
>
> * * *
>
> F. [Randall's] counterclaims are dismissed with prejudice.

(Appellants' App. pp. 301-03).

[10] The Trust now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

An action *in rem* is a proceeding that takes no cognizance of the owner but determines the right in specific property against all of the world, equally binding on everyone. *Flesch v. Circle City Excavating & Rental Corp.*, 210 N.E.2d 865, 700 (Ind. Ct. App. 1965) (citing 1 Am.Jur.2d, *Actions*, § 40). As such, "Actions *in rem* involve or determine the status of a thing, and therefore the rights of persons generally with respect to that thing." *R & D Transport, Inc. v. A.H.*, 859 N.E.2d 332, 335 (Ind. 2006) (citing BLACK'S LAW DICTIONARY 809 (8th ed. 2004). In an action *in rem* against land, "it is sufficient, in making any one a party defendant, to allege that he has or claims to have some interest in the property described in the complaint. It devolves upon a person thus made a defendant to assert whatever title he may have, or claim to have, if he shall desire to make a defense, or to rely upon his title." *Otis v. De Boer*, 19 N.E. 317, 319 (Ind. 1889) (internal references omitted).

The dispute before us centers on the rights vested in the Property, of which one-half interest was held by the Trust and one-half interest by Randall. By virtue of the $100,000 mortgage on the Property, the trial court granted Fifth Third a Decree of Foreclosure on both halves.

### I. *Standard of Review*

Where, as here, the trial court entered findings of fact and conclusions of law thereon pursuant to Ind. Trial Rule 52(A), our standard of review is two-tiered. *Dallas v. Cessna*, 968 N.E.2d 291, 296 (Ind. Ct. App. 2012). We first determine

whether the evidence supports the trial court's findings and second, we determine whether the findings support the judgment. *Briles v. Wausau Ins. Companies*, 858 N.E.2d 208, 212 (Ind. Ct. App. 2006). Findings of fact are clearly erroneous if they are unsupported by the findings and conclusions which rely upon those findings. *Id*. In establishing whether the findings or the judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom. *Id*. While conducting our review, we cannot reweigh the evidence or judge the credibility of any witnesses, and must affirm the trial court's decision if the record contains any supporting evidence or inferences. *Dallas*, 969 N.E.2d at 296. However, while we defer substantially to findings of fact, we do not do so for conclusions of law. *Id*. We evaluate conclusions of law *de novo* and owe no deference to a trial court's determination of such questions. *Id*.

## II. *The Continued Existence of the Trust*[2]

[14] Relying on the fact that he is the sole beneficiary of the Trust, Randall contends that "[t]he whole title of the trust assets, equitable as well as legal, unified in the same person, Randall, as the trustee and beneficiary, by the operation of law. As a result of the merger of the equitable and legal title of the trust assets to the

---

[2] Randall commences his appellate brief by contending that the mortgage is not enforceable because he and the Trust never received pre-suit notice of the foreclosure proceedings pursuant to Ind. Code § 32-30-10.5-8. We decline to address this argument as it was never raised before the trial court but rather it was presented for the first time on appeal. *See McKibben v. Hughes*, 23 N.E.3d 819, 828-29 (Ind. Ct. App. 2014) (an appellant who presents an issue for the first time on appeal waives the issue for purposes of an appellate review), *reh'g denied*.

same person, the Trust ceased to exist. Therefore, any foreclosure proceeding against the Trust is void." (Appellants' Br. p. 13).

[15] In support of his argument, Randall primarily relies on the combined effect of two sources. First, he refers to Ind. Code § 30-4-2-8, which provides, in pertinent part, that "if the title to the trust property and the entire beneficial interest becomes united in one (1) person, the trust terminates." And secondly, Randall cites to *Ellsworth v. Homemakers Fin. Srvc., Inc.*, 424 N.E.2d 166 (Ind. Ct. App. 1981), *reh'g denied*, where this court held that "the mortgagee's acquisition of the fee simple title results in a merger of the mortgage and the legal title, thus vesting the mortgagee with the complete title, and extinguishing the mortgage. However, merger does not necessarily follow from the acquisition of the land by the mortgagee where, for example, it would work an injustice or violate well established principles of equity." *Id.* at 168 (internal references omitted).

[16] Nevertheless, we find the reported authorities not dispositive to the case at hand. In order for the mortgage to extinguish, as Randall suggests, the fee simple title and legal title must be acquired by the mortgagee. *See id.* Here, Fifth Third, as mortgagee, never obtained the fee simple title to the Property, which under the provisions of the Trust, was acquired by Randall. Moreover, merely because the Trust ceased to exist by virtue of the transfer of the Trust assets to Randall, it does not invalidate Fifth Third's mortgage on the one-half interest of the Property, which was held by the Trust. *See, e.g., Condo v. Barbour et al.*, 200 N.E. 76, 78 (Ind. Ct. App. 1936)("[T]he title to personal property of a deceased vests in the administrator or executor and the title to real estate vests

in the heirs of such decedent, subject to any debts that the deceased might have had at the time of his death[.]"). Accordingly, Fifth Third can pursue foreclosure proceedings on the one-half interest in the Property that the Trust held prior to the merger of the fee simple title in Randall.

### III. *Randall's One-Half Interest in the Property[3]*

[17] Randall's main contention focuses on the trial court's conclusion, awarding Fifth Third a Decree of Foreclosure with respect to Randall's one-half interest in the Property on the ground that Randall is estopped from retaining the benefit of the loan proceeds underlying the $100,000 mortgage. Specifically, Randall makes a two-fold argument. First, he asserts that because he did not sign the instrument, the mortgage did not secure his one-half of the Property. While Fifth Third does not dispute the trial court's finding that Randall did not execute the Mortgage, it relies on the doctrine of equitable subrogation to assert its entitlement to foreclose on the entire Property. Second, Randall contends that by including his alleged signature on the mortgage document without his knowledge or consent, Fifth Third altered the mortgage document and therefore he maintains that the mortgage is void with respect to him. In turn, Fifth Third reiterates the trial court's argument and maintains that Randall is estopped from

---

[3] Randall asserts that the trial court found him "personally liable." (Appellants' Br. p. 17). However, the findings of the trial court belie his assertion as these explicitly state that Randall "is not personally liable on the Note and did not sign the Note." (Appellants' App. p. 297).

claiming an unburdened one-half interest in the Property. We will address each argument in turn.

## A. Estoppel

Without any further explanation, the trial court concluded in its Decree that Randall is "estopped from retaining the benefit of the loan proceeds" underlying the mortgage. (Appellants' App. p. 302). In its Appellee's Brief, Fifth Third expands on the trial court's conclusion and relies on *Wienke v. Lynch*, 407 N.E.2d 280 (Ind. Ct. App. 1980), to maintain that Randall is estopped from asserting a one-half interest in the Property "free and clear" because he "failed to say anything to Fifth Third or [the title company] when his mother's $100,000 mortgage-loan closed or before the filing of affirmative claims herein." (Appellee's Br. pp. 16 & 17).

In *Wienke*, a husband and wife owned property as tenants by the entireties. *Id.* at 282. The wife conveyed property to another without the husband's signature on the deed. *Id.* At closing, husband was informed that his presence was not needed and to wait outside. *Id.* Husband and wife divorced and five years after wife's conveyance of the property, husband sought to quiet title to the property, claiming a legal interest therein. *Id.* Responding to husband's claim that the conveyance by one tenant of the entireties is void and therefore no equitable defenses can be asserted by the grantee, we agreed that "the entireties relationship could not be severed by the unilateral action by one tenant." *Id.* at 283. We cautioned that "a finding that the conveyance is ineffective, however,

does not lead to the conclusion that the underlying legal interest is immune from equitable defenses of laches and acquiescence." *Id*. Applying laches, we could not "say as a matter of law that a five year delay does not constitute laches. It is the inequity of the delay resulting in prejudice, more so than the extent of the delay, that is pertinent. We defer to the trial court's apparent satisfaction of the element of delay." *Id*. at 284.

[20] While we agree with Randall that, unlike the unseverable tenants by the entireties relationship, the interest at hand is a separate right held by Randall in his own name, which was granted to him by quitclaim deed. Nevertheless, as we noted in *Wienke*, equitable doctrines "are directed at the actions, not the legal interest of the party against whom they are raised." *Id*. at 284. As such, the trial court and Fifth Third rely on equitable estoppel[4] to place an affirmative duty on Randall "to speak up" at the closing. (Appellee's Br. p. 17).

[21] Estoppel is a judicial doctrine sounding in equity. *Brown v. Branch*, 758 N.E.2d 48, 51 (Ind. 2001). It is a concept by which one's own acts or conduct prevents the claiming of a right to the detriment of another party who was entitled to and did rely on the conduct. *Id*. at 51-52. There are a variety of estoppel doctrines

---

[4] Laches and estoppel are distinct and separate equitable defenses. *Ryason v. Dunten et al.*, 73 N.E.74, 77 (Ind. 1905). Laches is an equitable doctrine, and requires: (1) inexcusable delay in asserting a known right; (2) an implied waiver arising from knowing acquiescence in existing conditions; and (3) a change in circumstances causing prejudice to the adverse party. *Town of New Chicago v. City of Lake Station ex. Rel. Lake Station Sanitary Dist.*, 393 N.E.2d 638, 652 (Ind. Ct. App. 2010). Here, the trial court explicitly concluded that Randall was "estopped" from retaining the benefit of the loan proceeds[.]" Accordingly, we will not address the equitable doctrine of laches.

including: estoppel by record, estoppel by deed, collateral estoppel, equitable estoppel (also referred to as estoppel *in pais*), promissory estoppel, and judicial estoppel. *Id.* at 53 (citing 28 Am.Jur.2d *Estoppel & Waiver* § 2 (2000)). All, however, are based on the same underlying principle: one who by deed or conduct has induced another to act in a particular manner will not be permitted to adopt an inconsistent position, attitude, or course of conduct that causes injury to such other. *Id.* (citing 31 C.J.S. *Estoppel & Waiver* § 2 (1996)). "Estoppels are as readily and fully recognized in courts of law as in courts of equity." 28 Am.Jur.2d *Estoppel & Waiver* § 3.

[22] Specifically, equitable estoppel is available only as a defense. 28 Am.Jur.2d *Estoppel & Waiver* § 35. "The party claiming equitable estoppel must show its (1) lack of knowledge and of the means of knowledge as to the facts in question, (2) reliance upon the conduct of the party estopped, and (3) action based thereon of such a character as to change his position prejudicially." *Money Store Inv. Corp. v. Summers*, 849 N.E.2d 544, 547 (Ind. 2006). The party claiming estoppel has the burden to show all facts necessary to establish it. *Story Bed & Breakfast, LLP v. Brown Cnty Area Plan Comm'n*, 819 N.E.2d 55, 67 (Ind. 2004). Equitable estoppel may arise from silence or acquiescence as well as from positive conduct. *City of New Albany v. Cotner*, 919 N.E.2d 125, 133-34 (Ind. Ct. App. 2009), *reh'g denied, trans. denied*. However, silence will not form the basis of an estoppel unless the silent party has a duty to speak. *Id*. at 134.

[23] Without having to examine more than the first requirement of estoppel, we conclude that Fifth Third is not eligible to rely on the doctrine as a defense.

After Kay quitclaimed one-half of the interest to Randall, the deed was duly recorded. "Deeds and mortgages, when properly acknowledged and placed on record as required by statute, are constructive notice of their existence." *Wienke*, 407 N.E.2d at 286. As such, Fifth Third was constructively aware and had the means of knowledge that Randall possessed a one-half interest in the Property. *See Money Store Inv. Corp*, 849 N.E.2d at 547. Accordingly, Fifth Third cannot now invoke the equitable defense of estoppel.

## B. Equitable Subrogation

[24] Our supreme court redefined the doctrine of equitable subrogation, which has been recognized in Indiana for more than a century, in *Bank of New York v. Nally*, 820 N.E.2d 644, 651 (Ind. 2005). "The nature of equitable subrogation is, as its name indicates, equity." *Neu v. Gibson*, 938 N.E.2d 556, 560 (Ind. 2010). "Subrogation arises from the discharge of a debt and permits the party paying off a creditor to succeed to the creditor's rights in relation to the debt." *Nally*, 820 N.E.2d at 651 (citation omitted). In other words, "[t]he doctrine substitutes one who fully performed the obligation of another, secured by a mortgage, for 'the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment.'" *Neu*, 938 N.E.2d at 560 (quoting Restatement (Third) of Property § 7.6(a) (1997)); *see also Nally*, 820 N.E.2d at 653. "This avoids an inequitable application of the general principle that priority in time gives a lien priority in right." *Neu*, 928 N.E.2d 560 (citation omitted). "In considering whether to order subrogation and thus bypass the general principle of priority, courts base their decisions on the equities,

particularly the avoidance of windfalls and the absence of any prejudice to the interests of junior lienholders." *Id.; see also Nally*, 820 N.E.2d at 653. Equitable subrogation is "a highly favored doctrine which is to be given a liberal application." *Nally*, 820 N.E.2d at 652 (quoting *Osterman v. Baber*, 714 N.E.2d 735, 738 (Ind. Ct. App. 1999), *trans. denied*).

[25]     Perhaps the case occurring most frequently is that in which the payor [i.e., the party asserting a right to equitable subrogation] is actually given a mortgage on the real estate, but in the absence of subrogation it would be subordinate to some intervening interest, such as a junior lien. Here subrogation is entirely appropriate, and by virtue of it the payor has the priority of the original mortgage that was discharged. This priority is often of critical importance, since it will place the payor's security in a position superior to intervening liens and other interests in the real estate. The holders of such intervening interests can hardly complain of this result, for it does not harm them; their position is not materially prejudiced, but is simply unchanged.

*Id*. at 653 (quoting Restatement (Third) of Property § 7.6 cmt. e). Applying the doctrine to a conventional refinancing, the *Nally* court noted:

A lender providing funds to pay off an existing mortgage expects to receive the same security as the loan being paid off. Refinancings are commonplace in today's economy. Permitting a junior lienholder to leapfrog the priority of the current senior mortgage would impair the owner's access to more favorable interest rates. Unless a junior lienholder is disadvantaged by permitting subrogation, we see no reason to give the junior lienholder in effect the right to block or object to the refinancing. We conclude that a mortgagee who refinances an existing mortgage is entitled to equitable subrogation even if it had actual or constructive knowledge of an existing lien on the property unless the junior lienholder is disadvantaged or the mortgagee is "culpably negligent" . . . , but this remedy is subject to the rights and limitations of the subrogor.

*Id.* at 653-54. Accordingly, as long as the refinancing lender is not culpably negligent, the refinancing lender is entitled to stand in the shoes of the senior lien and retain its priority status. *Id*. at 654.

[26] Here, it is undisputed that as part of the refinancing process, Fifth Third paid off the $50,000 mortgage to Fifth Third Bank. Accordingly, unless Fifth Third Bank was prejudiced or Fifth Third was culpably negligent, Fifth Third, as the refinancing lender, is entitled to stand in the shoes of Fifth Third Bank up to the amount of $50,000 as to Randall's one-half interest in the mortgage.

[27] One charged with "culpable negligence" may not be entitled to equitable subrogation. *Finance Center Federal Credit Union v. Brand*, 967 N.E.2d 1080, 1084 (Ind. Ct. App. 2012). Culpable negligence "contemplates action or inaction which is more than mere inadvertence, mistake, or ignorance" and "focuses on the activity of the party asserting subrogation." *Id*. (quoting *Nally*, 820 N.E.2d at 654). While preserving the rights of intervening creditors who record their interests is "plainly equitable," leapfrogging a senior claim is "precisely what equitable subrogation is designed to prevent." *Nally*, 820 N.E.2d at 655.

[28] Although Fifth Third realized that it had made a mistake by omitting the signatures on the original refinancing documents, it attempted to cure this omission by returning the originally executed mortgage documents to the title company and having the mortgage executed by Hugh, Kay, in her individual capacity, and Randall. Asserting that his signature was forged, Randall contends that Fifth Third's reliance on a document that includes a forged

signature amounts to culpable negligence under the doctrine. In particular, Randall notes that Fifth Third, as the lender who hired the title company, is responsible for the title company's act of including a forged signature on the mortgage documents.

[29] While not disputing the forged nature of Randall's signature, Fifth Third responds that there is no evidence supporting Randall's agency argument. We agree. In order to be held responsible for the acts of the title company, Fifth Third must "give [the title company] authority to act on [its] behalf." *Mullen v. Cogdell*, 643 N.E.2d 309, 398 (Ind. Ct. App. 1994), *reh'g denied, trans. denied*. To establish an agency relationship three elements must be shown: (1) a manifestation of consent by the principal, (2) an acceptance of the authority by the agent, and (3) control exerted by the principal over the agent. *Id*. These elements can be proven by circumstantial evidence. *Id*. at 398. Here, evidence was presented that Fifth Third instructed the title company to have the $100,000 mortgage re-executed after the initial closing. Even if we consider this evidence sufficient to establish an agency relationship, Randall failed to present evidence that Fifth Third instructed the title company to forge his signature. *See Mid-Continent Paper Converters, Inc. v. Brady, Ware & Schoenfeld, Inc.*, 715 N.E.2d 906, 909 (Ind. Ct. App. 1999) (citing *Conrad v. Olds*, 37 N.E.2d 297, 303 (Ind. Ct. App. 1941) (holding that the agent's knowledge will not be imputed to the principal if the agent acts in the adverse interest of the principal)). Accordingly, as Fifth Third refinanced the underlying $50,000 mortgage and in the absence

of culpable negligence, the bank is entitled to equitable subrogation and to assert a priority over the mortgagee of the $50,000 mortgage.

## C.  Alteration of the Mortgage Document

[30] Although we find that Fifth Third did not commit culpable negligence and is subrogated to stand in the shoes of the first mortgage holder; nevertheless, Randall contends that the re-execution of the $100,000 mortgage by Fifth Third constitutes a material alteration of the instrument which rendered it void.

[31] The material alteration of an instrument after its delivery, by a party who claims the benefit of it, or by one under whom he claims, made without the consent of the party against whom it is sought to be enforced, renders it void.  *Cochran v. Nebeker*, 48 Ind. 459, 462 (Ind. 1874).  An immaterial alteration, no matter by whom made, does not affect the validity of the instrument or the rights of the parties.  *Id*.  An alteration is an act done upon the instrument by which the meaning or language is changed.  *Id*.  The term is usually applied to the act of the party entitled under the instrument, and imports some fraud or improper design to change its effect, and therefore an alteration made by accident or mistake could not have the effect to avoid the instrument.  *Id*.  Despite Fifth Third's insistence to the contrary, this rule has been made applicable to mortgages.  *See, e.g.*, *Bayse v. McKinney*, 87 N.E. 693 (Ind. Ct. App. 1909); *McKinney v. Cabell*, 57 N.E. 598 (Ind. Ct. App. 1900).

[32] In December of 2004, Kay, as trustee of the Trust, established a life estate on the Property for the benefit of herself and her husband.  The remainder interest

of one-half of the Property remained with the Trust, whereas the other one-half remainder interest was deeded to Randall by quitclaim deed. This quitclaim deed was duly recorded. Accordingly, at the time Kay sought to refinance the Property and contemplated entering into a $100,000 mortgage with Fifth Third, Fifth Third was constructively aware that both the Trust and Randall held a remainder interest in the Property. *See Wienke*, 407 N.E.2d at 286. Nonetheless, only Kay, as trustee of the Trust, executed the $100,000 mortgage on July 21, 2005. After the initial closing, it was discovered—the record is unclear as to how the discovery was made—that Kay, in her individual capacity, Hugh, and Randall, as parties having an interest in the mortgaged Property had not executed the mortgage. Accordingly, Fifth Third initiated re-execution proceedings during which the signatures of all interested parties were purportedly procured. The trial court found—and this finding is uncontested by the parties—that Randall "did not execute the [m]ortgage." (Appellant's App. p. 299).[5]

[33]     In *Nicholson v. Combs et al.*, 90 Ind. 515, 515 (1883), our supreme court held that "[i]t is settled law in this State that the material alteration of a promissory note, made at the instance of the payee, and without the knowledge of the maker, releases the latter from all liability on the note. It is also firmly settled that the

---

[5] Although a signature purporting to be Randall's appears on the mortgage, the trial court failed to enter any findings as to whether the signature was forged and who had committed the forgery.

addition of the name of a party as maker is a material alteration of the instrument." (internal references omitted).

[34] The parties do not contest that Kay and Hugh consented to the re-execution of the mortgage. As such, the re-execution is valid with respect to the one-half interest of the Trust. However, as Randall did not sign the mortgage—despite the occurrence of his purported signature on the document—he did not give consent nor did he gain knowledge of his incurred responsibility under the document. Therefore, as Randall's name and signature were added to the mortgage without his consent or knowledge, the mortgage is void with respect to his one-half interest in the Property. Consequently, the Fifth Third mortgage with respect to Randall's one-half interest in the Property is void based on the material alteration of the mortgage document. We reverse the trial court's Decree with respect to Randall's one-half interest in the Property.[6]

## CONCLUSION

[35] Based on the foregoing, we affirm the trial court's Decree of Foreclosure with respect to the one-half interest held by the Trust; however, we reverse the trial court's Decree of Foreclosure with respect to Randall's one-half interest in the Property.

---

[6] Because we reverse the trial court's decree in favor of Randall, we need not address his arguments contesting the trial court's dismissal of his counterclaims.

[36] Affirmed in part and reversed in part.

[37] Bailey, J. and Barnes, J. concur