

**FILED**
Feb 09 2016, 8:27 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS

Marc A. Menkveld
Katz & Korin, PC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
DEUTSCHE BANK NATIONAL
TRUST COMPANY

Mark S. Gray
Kurt V. Laker
Doyle Legal Corporation, P.C.
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

Robert Samuels and Simon
Lynes,

*Appellants-Plaintiffs,*

v.

Berney W. Garlick, Laurie A.
Garlick, Deutsche Bank
National Trust Company, as
Trustee for Saxon Asset-
Securities Trust 2007-4, and
Indiana Department of Revenue,

*Appellees-Defendants*

February 9, 2016

Court of Appeals Case No.
49A05-1509-MF-1348

Appeal from the Marion Superior
Court

The Honorable James B. Osborn,
Judge

Trial Court Cause No.
49D14-1210-MF-39429

**Crone, Judge.**

# Case Summary

Berney W. Garlick and Laurie A. Garlick acquired three tracts of land in Marion County. The Garlicks sold a portion of two of those tracts, combined the remaining property, and recorded a three-lot subdivision plat that shows Lot 1's address as 8611 West 96th Street, Zionsville. The Garlicks sold Lot 3 and kept Lots 1 and 2. The Garlicks gave Saxon Mortgage, Inc. ("Saxon"), a mortgage to secure a loan ("the Saxon mortgage"). The Saxon mortgage was filed with the Marion County Recorder ("the Recorder") in August 2007 and gives a metes and bounds description of two adjacent tracts, commonly known as 8611 West 96th Street, Zionsville, that coincide with the western 155 feet of Lots 1 and 2 and extend past the southern boundary of Lot 2. The Saxon mortgage was assigned to Deutsche Bank National Trust Company, as Trustee for Saxon Asset-Securities Trust 2007-4 ("Deutsche Bank").

Three years later, the Garlicks gave Robert Samuels and Simon Lynes ("S&L") a mortgage to secure a second loan ("the S&L mortgage"). The S&L mortgage was filed with the Recorder in August 2010. It describes the mortgaged property as Lots 1 and 2 and states that Lot 1 is commonly known as 8611 West 96th Street, Zionsville. Both lots were sold at tax sale, and S&L redeemed only Lot 1.

S&L filed suit against the Garlicks to foreclose their mortgage. Deutsche Bank was also named as a defendant and asserted that the Saxon mortgage was prior and therefore superior to the S&L mortgage. S&L and Deutsche Bank filed cross-motions for partial summary judgment as to the priority of the mortgages.

The trial court granted Deutsche Bank's motion and ruled that the Saxon mortgage is prior and therefore superior to the S&L mortgage as to the portion of Lot 1 that the Saxon mortgage describes.

[4] On appeal, S&L argue that the Saxon mortgage is invalid because it does not sufficiently describe the mortgaged property. We disagree and therefore affirm the trial court.

## Facts and Procedural History

[5] The relevant facts are undisputed. Dale Craft conveyed two adjacent tracts in Marion County to the Garlicks via a warranty deed ("the Craft deed") containing a metes and bounds description of the tracts. Tract I measured 125 feet east-west, and Tract II to its west measured 30 feet east-west, for a total of 155 feet. Both tracts measured 696.96 feet north-south and were bordered by 96th Street on the north. According to the Craft deed, the address of the property was commonly known as 8611 West 96th Street, Indianapolis. The Craft deed was filed with the Recorder in June 2003.

[6] In March 2004, Heritage Development of Indiana, LLC ("Heritage"), conveyed a roughly triangular tract ("Tract III") abutting the northern portion of Tract I's eastern boundary to the Garlicks via a quitclaim deed ("the Heritage deed") containing a metes and bounds description of the tract. Woodslake Drive bordered Tract III and the southern portion of Tract I on the east. The Heritage deed was filed with the Recorder in May 2004.

[7]     Also in March 2004, the Garlicks conveyed to Heritage the southern 193.55 feet of Tracts I and II via a warranty deed containing a metes and bounds description of the property. This deed was filed with the Recorder in May 2004. This property became known as Lot 25.

[8]     The Garlicks combined the remaining portion of Tracts I and II with Tract III and filed a retracement survey of that property with the Recorder in August 2006. The Garlicks then subdivided the property into three lots, with Lot 1 (containing most of Tract III) to the north, Lot 2 (containing the rest of Tract III) in the middle, and Lot 3 to the south. This subdivision was designated as the Copper Ridge Secondary Plat, which was filed with the Recorder in October 2006. The plat contains a metes and bounds description of the subdivision and shows Lot 1 as the Garlicks' property with an address of 8611 West 96th Street. West 96th Street borders Lot 1 on the north, and Woodslake Drive borders all three lots on the east. The Garlicks sold Lot 3 in February 2007 and kept Lots 1 and 2.

[9]     In July 2007, the Garlicks gave a mortgage to Saxon to secure a loan. The Saxon mortgage was filed with the Recorder in August 2007. The metes and bounds legal description of the mortgaged property mirrors that of the Craft deed, except for a scrivener's error regarding the western boundary of Tract I (969.96 feet vs. 696.96 feet). In other words, the Saxon mortgage describes property that the Garlicks no longer owned (Lots 3 and 25), does not describe any portion of Tract III, and describes only the western 155 feet of Lots 1 and 2. The Saxon mortgage also states that the property is commonly known as 8611

West 96th Street, Zionsville. In July 2007, Saxon assigned its mortgage to Deutsche Bank. The assignment was not filed with the Recorder until March 2013.[1]

[10] In July 2010, the Garlicks gave a mortgage to S&L to secure a loan. The S&L mortgage was filed with the Recorder in August 2010. The mortgaged property is described as Lots 1 and 2 in Copper Ridge Secondary Plat, with Lot 1 commonly known as 8611 West 96th Street, Zionsville, and Lot 2 commonly known as 9520 Woodslake Drive, Zionsville. Lot 2 was sold at a Marion County tax sale and was not redeemed. Lot 1 was sold at a tax sale in October 2010 and was redeemed by S&L, who have also paid property taxes to keep it from being sold again at tax sale.

[11] In October 2012, S&L filed a complaint against the Garlicks, Saxon, and the Indiana Department of Revenue seeking foreclosure of their mortgage, among other things.[2] Deutsche Bank was later substituted for Saxon as a defendant. In its answer, Deutsche Bank asserted that the Saxon mortgage was prior and therefore superior to the S&L mortgage. S&L and Deutsche Bank filed cross-motions for partial summary judgment as to the priority of the mortgages.

---

[1] In August 2011, the Saxon mortgage was "re-recorded" to correct its legal description. Appellants' App. at 81. The amended description excludes Lot 3, Lot 25, and Tract III. Neither party contends that this re-recorded mortgage is relevant to our analysis below.

[2] The complaint does not appear in the record before us, so the precise nature of S&L's allegations beyond foreclosure is not entirely clear.

After a hearing, in August 2015 the trial court issued an order that reads in pertinent part as follows:

> 9. The legal description of the mortgage[d] property contained in the Saxon mortgage describes 155 feet by parallel lines off the West end of Lot 1 in Copper Ridge, Secondary plat.
>
> 10. There is no genuine issue as to any material fact necessary to support entry of judgment in favor of Deutsche Bank with respect to the matter of mortgage priority. Deutsche Bank is entitled to partial summary judgment as a matter of law.
>
> 11. Deutsche Bank is entitled to judgment that its mortgage is a valid lien, prior and superior to that of [S&L], not as to Lots 2 or 3, and only as to that part of Lot 1 of Copper Ridge which is covered by the legal description in its mortgage.
>
> 12. To the extent that [S&L prove that they have] paid dollar amounts: (1) for Indiana real property taxes and assessments which became a lien against Lot 1; and/or (2) representing the statutory amount to redeem Lot 1 from real property tax sale, then [S&L are] entitled to recover amounts so proved (without interest) from the proceeds made from the sale of Lot 1 at mortgage foreclosure sale. Deutsche Bank is not liable to pay any amount to [S&L].
>
> 13. The Court finds that there is no just reason for delay, and directs that entry of judgment shall be a final judgment as contemplated by Trial Rules 56(C) and 54(B).
>
> WHEREFORE IT IS ORDERED, ADJUDGED AND DECREED:
>
> That Deutsche Bank … is the holder and owner of the mortgage described in the pleadings herein …. Said mortgage is a valid, paramount and subsisting lien against the subject real property,

prior and superior to the mortgage given to [S&L] ….

FURTHER ORDERED:

That at such time as the remainder of the issues and claims in this cause are disposed of, such that a final decree of mortgage foreclosure and order for foreclosure sale is to be entered, and entered consistent with the entirety of this order and judgment, then Deutsche Bank shall provide the Court with a plat of survey (1) to depict and describe the portion of said Lot 1 in Copper Ridge, Secondary plat covered by the legal description in the aforedescribed 2007 Saxon mortgage, and (2) to depict and describe the remainder of Lot 1. The Court shall make reference to, and incorporate the plat of survey into its final decree.

*Id.* at 8-10. S&L now appeal.[3]

# Discussion and Decision

S&L appeal the trial court's entry of partial summary judgment in Deutsche Bank's favor. Pursuant to Indiana Trial Rule 56(C), "[s]ummary judgment is appropriate only where the designated evidence shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Missler v. State Farm Ins. Co.*, 41 N.E.3d 297, 301 (Ind. Ct. App. 2015). A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Devereux*

---

[3] The Garlicks and the Indiana Department of Revenue do not participate in this appeal, but under Indiana Appellate Rule 17(A) a party of record in the trial court shall be a party on appeal.

*v. Love*, 30 N.E.3d 754, 762 (Ind. Ct. App. 2015), *trans. denied*. "If the material facts are not in dispute, our review is limited to determining whether the trial court correctly applied the law to the undisputed facts." *Id.* We review pure questions of law de novo. *Id.*

[14] "In reviewing cross-motions for summary judgment, we consider each motion separately." *Id.* (citation and quotation marks omitted). On appeal, the trial court's summary judgment ruling is cloaked with a presumption of validity. *Id.* at 763. "Where a trial court enters specific findings and conclusions, they offer insight into the rationale for the trial court's judgment and facilitate appellate review, but are not binding upon this court." *Missler*, 41 N.E.3d at 301. We are not limited to reviewing the trial court's reasons for its ruling and may affirm if it is sustainable on any theory found in the evidence designated to the trial court. *Devereux*, 30 N.E.3d at 763.

[15] Indiana Code Section 32-21-4-1(a) provides that a mortgage of land "must be recorded in the recorder's office of the county where the land is situated[.]" A mortgage "takes priority according to the time of its filing." Ind. Code § 32-21-4-1(b). Indiana Code Section 36-2-11-12 provides,

> (a) The recorder shall index each volume of instruments the recorder records by:
>
>> (1) the name of each grantor, promisor, or covenantor, in alphabetical order and cross-referenced to the proper grantee, promisee, or covenantee; and
>>
>> (2) the name of each grantee, promisee, or covenantee, in

alphabetical order and cross-referenced to the proper grantor, promisor, or covenantor.

(b) The recorder shall accurately maintain separate indexes of all the records of:

(1) deeds for real estate; and

(2) mortgages on real estate;

in the recorder's office. The recorder shall index each deed or mortgage alphabetically, by the name of each grantor and grantee or mortgagor and mortgagee, and shall include in each index entry a concise description of the real property, the date of the deed or mortgage, and the number or letter of the book and the page at which each deed or mortgage is recorded.

[16]    In this case, it is undisputed that the Saxon mortgage was recorded three years before the S&L mortgage and therefore would take priority unless it is somehow invalid.[4] Our supreme court has stated,

The purpose of recording a mortgage is to give notice to persons subsequently dealing with the property of the existence of the mortgage and to charge them with notice of what the records disclose. To charge subsequent purchasers with notice, a mortgage must be recorded in the proper county and must contain an accurate legal description of the property.

---

[4] S&L do not specifically assert that the Saxon mortgage is invalid because its assignment to Deutsche Bank was not recorded until 2013.

*Bank of New York v. Nally*, 820 N.E.2d 644, 649-50 (Ind. 2005) (citations omitted). Also, "a recorded mortgage must be in the 'chain of title.'" *Id.* at 650 (quoting *Szakaly v. Smith*, 544 N.E.2d 490, 492 (Ind. 1989)). "[A] prospective purchaser or mortgagee is on notice of outstanding mortgages for the period that the mortgagor held title of the real estate according to the chain of title." *Id.* at 651.

[17] Via the affidavit of Daniel Christian, Deutsche Bank established that the Saxon mortgage is in the Garlicks' chain of title and can be found by using the Recorder's index of records listing Berney Garlick as a grantee from August 2010 (when the S&L mortgage was recorded) backward to June 2003 (when the Craft deed was recorded) and as a grantor from June 2003 forward to August 2010.[5] S&L do not dispute this but assert that the Saxon mortgage is invalid because its legal description of the mortgaged property is defective.

---

[5] S&L submitted the affidavit of Jennifer Jones, the co-owner of Royal Title Services, Inc., which S&L hired to perform "a current owner search for the property commonly known as 8611 West 96th Street, Zionsville[.]" Appellants' App. at 96. Jones stated that Royal Title

> searched the Title Scan Title Plant, maintained by Fidelity National Title … for Lot 1 in Copper Ridge from the date of Plat (October 23, 2006) to the current effective date (December 9, 2014). To search for property information prior to the date of Plat, Royal Title searched the arbitrary numbers for the Property in Title Scan going back to June 26, 2003. This is performed by inputting the arbitrary number – which is a number given to metes and bounds described parcels that have not yet been platted. This method of searching is the industry standard.

*Id.* at 96-97. Using the street address, legal description of Lot 1, parcel number, state parcel number, and names of the owners of record (i.e., the Garlicks) as search parameters, Royal Title found "only one recorded mortgage that is currently indexed against the Property," i.e., the S&L mortgage. *Id.* at 97. This case illustrates the perils of limiting a mortgage search by parcel number, given that the official mortgage records maintained by the county recorder are indexed by name pursuant to statute. *Cf. Szakaly*, 544 N.E.2d at 491-92 (describing process of determining chain of title by tracing grantor's name).

[18]     This Court has stated,

> In order for a mortgage to be effective, it must contain a description of the land intended to be covered sufficient to identify it. The test for determining the sufficiency of a legal description is whether the tract intended to be mortgaged can be located with certainty by referring to the description.

*Keybank Nat'l Ass'n v. NBD Bank*, 699 N.E.2d 322, 326 (Ind. Ct. App. 1998) (citing, inter alia, *Matter of Estate of Lawrence*, 565 N.E.2d 357, 359 (Ind. Ct. App. 1991)).

[19]     In *Lawrence*, a 6.85-acre tract was conveyed to Marc Lawrence and other family members via a deed containing a metes and bounds description of the property, commonly described as 228 Gilmore Road. As security for a loan, the Lawrences gave a bank a mortgage describing that tract as well as real estate that they did not own. The Lawrences then conveyed to Marc a 0.30-acre tract that was part of the 6.85-acre tract and commonly described as 227 Gilmore Road. Marc gave the same bank a mortgage on the 227 Gilmore Road tract stating that the tract was "'free and clear of all liens and encumbrances except for the lien of taxes and assessments not delinquent and [the] first mortgage[.]'" *Lawrence*, 565 N.E.2d at 358 (citation omitted). After Marc's death, a dispute arose regarding whether the 227 Gilmore Road tract was subject to the first mortgage. The trial court determined that the first mortgage was invalid as to the 227 Gilmore Road tract because the mortgage's property description was "insufficient" to locate that tract "with certainty[.]" *Id*.

On appeal, this Court concluded otherwise:

> The [first mortgage's] description of the mortgaged premises is a facially valid legal description–i.e., the metes and bounds description encloses a tract of ground and it has a definite and ascertainable point of beginning …. The fact that the described premises encompasses more real estate than is owned by the mortgagors is relevant only to the issue whether there is a valid and enforceable lien on the non-owned premises; it does not impair the validity of the lien on the mortgaged premises.

> The description identifies the 227 Gilmore Road property because the legal description of that property falls within the description of the mortgaged premises.

*Id*. at 359.

Here, S&L assert that the Saxon mortgage "both over- and under-describes the Mortgaged Property" and therefore "it is impossible to determine which property was intended to be mortgaged." Appellants' Br. at 9. We disagree. The Saxon mortgage, which is in the Garlicks' chain of title, put prospective purchasers or mortgagees on notice of an existing mortgage on property commonly known as 8611 West 96th Street, Zionsville – the same address shown on Lot 1 of the Copper Ridge Secondary Plat, which is also in the Garlicks' chain of title. The Saxon mortgage's metes and bounds description is a facially valid legal description, has the same geographic starting point as that of the Copper Ridge Secondary Plat, and encompasses the western 155 feet of

that plat.[6]  Appellants' App. at 34, 70.  As we said under analogous circumstances in *Lawrence*, the fact that the premises described in the Saxon mortgage encompasses more (and/or less) real estate than was owned by the Garlicks "is relevant only to the issue whether there is a valid and enforceable lien on the non-owned premises; it does not impair the validity of the lien on the mortgaged premises."  565 N.E.2d at 359.

[22]  Consequently, we agree with the trial court that Deutsche Bank has a prior and therefore superior lien as to that part of Lot 1 in Copper Ridge Secondary Plat that is covered by the legal description in the Saxon mortgage.[7]  Accordingly, we affirm the entry of partial summary judgment in Deutsche Bank's favor.

[23]  Affirmed.

Vaidik, C.J., and Bailey, J., concur.

---

[6] S&L do not argue that the scrivener's error in the Saxon mortgage's property description affects the mortgage's validity.

[7] S&L state, "It is undisputed that the [Saxon] Mortgage was created and recorded after the Copper Ridge Secondary Plat was recorded" and "does not refer to the legal description of Lot 1 as set out in the Plat, but refers instead to the metes and bounds description of just a portion of Lot 1 (i.e., the method used before the plat was made)." Appellants' Br. at 12.  S&L argue that under Indiana Code Section 36-7-3-14, "the description contained in the recorded plat (i.e., Copper Ridge Lot 1) is the sole way of describing property in a legal instrument." *Id*.  We find no such limitation in the statute, which is inapplicable in any event because it governs the vacation of platted land, which has not occurred here.  S&L also characterize the trial court's summary judgment ruling as "an improper method of subdividing platted property." Appellants' Br. at 14.  This argument is based on the faulty premise that the ruling vacates the Copper Ridge plat.  It is possible that the foreclosure proceeding will result in a single entity owning all of Lot 1.  If the proceeding ultimately necessitates the vacation of Lot 1, we presume that all parties will follow the applicable law. *See, e.g.*, Ind. Code §§ 36-7-3-10 (vacation of plat or part of plat when "all the owners of land in a plat are in agreement regarding a proposed vacation") and 36-7-4-711 (vacation of plat or part of plat when "not all the owners of land in a plat are in agreement regarding a proposed vacation").